The STATE of Ohio, Appellee,

v.

BROWN, Appellant.

[Cite as *State v. Brown,* 151 Ohio App.3d 36, 2002-Ohio-5207.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 01 CA 120.

Decided Sept. 26, 2002.

38

Paul J. Gains Mahoning County Prosecuting Attorney, and Jan O'Halloran, Assistant Prosecuting Attorney, for appellee.

Louis M. DeFabio, for appellant.

DeGenaro, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-appellant, James Edward Brown, ap-

peals from the judgment of the Mahoning County Court of Common Pleas that determined he was a sexual predator in accordance with R.C. 2950.09. We are asked to decide whether the trial court (1) had jurisdiction to conduct the sexual predator proceeding, (2) properly admitted certain evidence during that proceeding, and (3) determined that Brown is a sexual predator by clear and convincing evidence. We conclude that the trial court did have jurisdiction to conduct this proceeding, that the trial court properly admitted the challenged evidence as the Rules of Evidence do not strictly apply in sexual predator hearings, and that Brown's sexual predator determination was supported by clear and convincing evidence. Thus, we affirm the trial court's decision.

{¶ 2} During October 1978, Brown was found guilty of aggravated murder, aggravated robbery, kidnapping, and rape, and the trial court sentenced him to life imprisonment on the aggravated murder charge, and a term of seven to twenty-five years imprisonment on the remainder of the charges. Brown's sentence for aggravated robbery was vacated in 1984.

{¶ 3} In a letter dated February 9, 2001, the Ohio Department of Rehabilitation and Correction sent a letter to the trial court recommending that Brown be adjudicated a sexual predator. Accordingly, the trial court held a sexual predator hearing. During that hearing, Brown argued that the trial court was without jurisdiction to make a sexual predator determination. He also objected to the introduction of certain materials into evidence. At the conclusion of the sexual predator hearing, the trial court allowed the parties to submit post-hearing briefs. After reviewing the record, the trial court found by clear and convincing evidence that Brown was a sexual predator.

{¶ 4} We affirm the trial court's decision for three reasons. First, a trial court has jurisdiction to conduct a sexual predator proceeding under R.C. 2950.09(C)(1) even if the department does not file a recommendation that the trial court do so. Thus, it does not matter that the department's recommendation fails to specify why it believes that the court should conduct that hearing. Second, the Rules of Evidence do not strictly apply in sexual predator proceedings, and the trial court is allowed to examine all evidence that demonstrates some indicia of reliability, regardless of whether that evidence was authenticated as contemplated by the Rules of Evidence. Because the challenged evidentiary material in this case all demonstrates some indicia of reliability, the trial court's decision to rely on those evidentiary materials was not an abuse of discretion. Finally, the circumstances regarding the underlying offense as a whole support the trial court's conclusion that Brown is a sexual predator.

{¶ 5} Before addressing the substance of Brown's assigned errors, we note that the statutory law surrounding sexual predator determinations, R.C. Chapter 2950, was amended effective January 1, 2002. However, Brown was determined

to be a sexual predator prior to the effective date of that amendment. Accordingly, all references to the Revised Code refer to the former version of R.C. Chapter 2950, which was in effect at the time of Brown's sexual predator proceedings.

{¶ 6}  Brown's first assignment of error argues:

{¶ 7}  "The trial court lacked jurisdiction to conduct sexual predator proceedings due to the fact that the Department of Rehabilitation and Correction's determination to recommend that the appellant be classified as a sexual predator was defective and not in accordance with the provisions of Ohio Revised Code 2950.09(C)(1). As a result, the trial court proceedings and judgment rendered must be considered a nullity and void."

{¶ 8}  In this case, Brown's sexual predator proceeding began when the department recommended to the trial court that Brown be adjudicated a sexual predator. According to Brown, R.C. 2950.09(C)(1) requires that the department make its recommendation after considering all the factors set forth in R.C. 2950.09(B)(2). In this case, the department's sexual predator screening instrument indicates that none of the factors described in R.C. 2950.09(B)(2) applies to Brown. Thus, according to Brown, the recommendation is defective. Brown argues that the department's recommendation is a "charging instrument," and a proper recommendation is a mandatory jurisdictional prerequisite in order for a trial court to conduct a sexual predator adjudication.

{¶ 9}  R.C. 2950.09(C)(1) provides:

{¶ 10}  "(C)(1) If a person was convicted of or pleaded guilty to a sexually oriented offense prior to January 1, 1997, if the person was not sentenced for the offense on or after January 1, 1997, and if, on or after January 1, 1997, the offender is serving a term of imprisonment in a state correctional institution, the department of rehabilitation and correction shall determine whether to recommend that the offender be adjudicated as being a sexual predator. In making a determination under this division as to whether to recommend that the offender be adjudicated as being a sexual predator, the department shall consider all relevant factors, including, but not limited to, all of the factors specified in division (B)(2) of this section. If the department determines that it will recommend that the offender be adjudicated as being a sexual predator, it immediately shall send the recommendation to the court that sentenced the offender and shall enter its determination and recommendation in the offender's institutional record, and the court shall proceed in accordance with division (C)(2) of this section." Id.

{¶ 11}  According to Brown's argument, this section makes the department's recommendation a jurisdictional prerequisite before the trial court can conduct a sexual predator determination. Numerous Ohio courts have addressed this issue

and have uniformly found that the department's recommendation is not a jurisdictional requirement in order for the court to conduct a sexual predator determination. See *State v. Shepherd* (Feb. 6, 2002), 9th Dist. No. 20364, 2002 WL 185181; *State v. Henes* (Nov. 2, 2001), 6th Dist. No. L–01–1222, 2001 WL 1346116; *State v. Clark* (Mar. 29, 1999), 12th Dist. No. CA98–11–103, 1999 WL 172848; *State v. Hardy* (Oct. 16, 1997), 8th Dist. No. 72463, 1997 WL 638801. The reasoning behind this conclusion is best stated in *Clark*.

{¶ 12} In *Clark*, the court deemed it significant that R.C. 2950.09 does not provide that the trial court may conduct a sexual predator classification hearing only if the department makes such a recommendation. It further noted that, pursuant to R.C. 2950.09(C)(2)(a), the department's recommendation is not binding upon the trial court. It then went on to describe how the applicable jurisdictional statute is R.C. 2950.01(G)(3) rather than R.C. 2950.09(C)(1).

{¶ 13} Simply stated, R.C. 2950.09(C)(1) is mandatory rather than directory, and, thus, not jurisdictional in nature, because "[t]he legislature did not indicate that the department's recommendation was 'essential to the validity of the * * * proceeding.'" Id. at 4. "Because the information concerning this category of offenders is within the control of the department, they were the logical agency to conduct initial screening. However, this initial screening is merely a mechanism for forwarding the offender to the trial court; it is not binding." Id. The statute does not even require the department to disclose its recommendation to the offender. Id. at 5. Because the department's recommendation is merely a reasonable mechanism of triggering the sexual predator proceeding, "the department's recommendation does not provide procedural protection to the offender." Id.

{¶ 14} "The offender is instead given the requisite procedural protections by the trial court. First, the offender is given notice of the hearing. R.C. 2950.09(C)(2)(b). Indeed, one court has held that this notice must be effective or a sexual predator classification is not valid. *State v. Hanrahan* (Mar. 5, 1998), Franklin App. No. 97APA03–394, unreported [1998 WL 90732]. At the hearing, the offender is entitled to appointed counsel and may call and cross-examine witnesses. R.C. 2950.09(B)(1). The offender is therefore provided with the requisite procedural protections through notice and hearing. The department's recommendation provides no additional protection." Id.

{¶ 15} We agree with the Twelfth District's reasoning in *Clark*. The language regarding the recommendation from the department merely establishes a mechanism through which the trial court may consider the issue of whether an offender is a sexual predator. It is not a jurisdictional requirement that must be fulfilled in order for the trial court to engage in the sexual predator determination. Thus, the trial court had jurisdiction to conduct Brown's sexual predator

determination regardless of whether the department properly completed its form recommendation. Brown's first assignment of error is meritless.

{¶ 16}  In his second assignment of error, Brown argues:

{¶ 17}  "The appellant was denied due process of law and his confrontational rights at the sexual predator hearing due to the trial court's receipt and reliance upon letters purportedly written by the appellant, the appellant's institution record and a postsentence investigation report."

{¶ 18}  Brown argues that the trial court erred when it admitted three sets of documents into evidence.  He first argues that the trial court erred when it admitted two letters purportedly written by Brown to the trial court into evidence as they were not properly authenticated.  Second, he argues that the institutional record introduced into evidence was improperly admitted as it was also unauthenticated.  Finally, he argues that the postsentencing report constitutes unreliable hearsay and should not have been admitted into evidence.

{¶ 19}  It is well settled that a trial court enjoys broad discretion regarding the admissibility of evidence and, unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb its decision.  *State v. Issa* (2001), 93 Ohio St.3d 49, 64, 752 N.E.2d 904, certiorari denied (2002), 535 U.S. 974, 122 S.Ct. 1445, 152 L.Ed.2d 387.  An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably.  *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.  As the rules governing the authentication of admissible evidence are uniform across the country, it is appropriate to review case law from both federal law and the laws of the several states.  See *State v. Mock* (1993), 85 Ohio App.3d 332, 619 N.E.2d 1068.

{¶ 20}  Pursuant to Evid.R. 101(C), the Rules of Evidence do not strictly apply in a sexual predator determination.  *State v. Cook* (1998), 83 Ohio St.3d 404, 425, 700 N.E.2d 570, certiorari denied (1999), 525 U.S. 1182, 119 S.Ct. 1122, 143 L.Ed.2d 116.  However, even though evidentiary rules are relaxed in a sexual predator determination, the evidence presented at a sexual predator hearing must have some indicia of reliability.  *State v. Hurst* (Apr. 10, 2000), 7th Dist. No. 97 CO 60, at 2, 2000 WL 459681.  Thus, reliable hearsay, such as a presentence investigation report, may be relied upon by the trial judge.  *Cook* at 425, 700 N.E.2d 570.  However, not all statements in such a report are admissible and statements adopted from a presentence investigation report must also bear some indicia of reliability.  *State v. Bowers* (Sept. 6, 2001), 10th Dist. No. 00AP-1453, at 2, 2001 WL 1013090. In order for evidence to be reliable, there must be a

reasonable probability it is true. *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303.

{¶ 21} Brown challenges the admissibility of the department's institutional records because they were not authenticated in accordance with the Rules of Evidence, claiming that this violates his right to confront the evidence against him. It must be noted that Brown does not argue that the records would be inadmissible if they were properly authenticated. As the Eighth District stated in *State v. Smith* (Dec. 13, 2001), 8th Dist. No. 79892, 2001 WL 1612093, an institutional report prepared by a department administrator is reliable hearsay which a trial court can consider when making a sexual predator determination. Instead, he argues that the state's failure to properly authenticate those records deprives him of his constitutional rights to confront adverse witnesses.

{¶ 22} There is some disagreement among the various appellate courts in this state regarding whether it is proper for a trial court to consider unauthenticated documents when conducting judicial functions, such as sexual predator determinations, in which the Rules of Evidence are relaxed. For example, in *Columbus v. Bickel* (1991), 77 Ohio App.3d 26, 601 N.E.2d 61, the Tenth District held that evidence must be properly authenticated in order to be considered by the trial judge even when the Rules of Evidence do not strictly apply. Likewise, in both *State v. Swank* (Dec. 21, 2001), 11th Dist. No. 98–L–049, 2001 WL 1647224, and *State v. Swick* (Dec. 21, 2001), 11th Dist. No. 97–L–254, 2001 WL 1647220, the Eleventh District has concluded that the trial court may have technically erred in considering unauthenticated documents in a sexual predator proceeding. However, it did not find that error reversible as nothing in the record indicated that the documents were either untrue or unreliable copies of the original. Id. at 2; see, also, *Swick* at 7. In contrast, other courts have not found that a trial court errs when it considers unauthenticated documents when conducting a sexual predator determination. See *State v. Zamora* (Dec. 7, 2001), 6th Dist. No. WD–01–018, 2001 WL 1556581; *State v. Korecky* (Oct. 31, 2000), 10th Dist. No. 00AP–143, 2000 WL 1629685; *State v. Lane* (Nov. 3, 1999), 1st Dist. No. C–990103, 1999 WL 1126378; *State v. Smith* (Dec. 13, 2001), 8th Dist. No. 79892, 2001 WL 1612093.

{¶ 23} As can be seen, these cases all agree that the rules regarding admissibility of evidence have been relaxed in sexual predator hearings. The real issue is whether the rules regarding the authentication of evidence are also relaxed in these types of proceedings and, if so, to what extent. In order to make that determination, we must look to both the purpose behind exempting proceedings like sexual predator determinations from the Rules of Evidence and the function authentication performs in judicial proceedings.

{¶ 24}  In proceedings ancillary to criminal convictions, such as sentencing, probation revocation, and sexual predator determinations, courts have long held that it is proper for a trial court to consider evidence the defendant does not have an opportunity to confront.  *Williams v. New York* (1949), 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337, rehearing denied (1949), 337 U.S. 961, 69 S.Ct. 1529, 93 L.Ed. 1760; *Cook,* supra; *State v. Baughman* (May 4, 1999), 10th Dist. No. 98AP–929, 1999 WL 280704; *State v. Qualls* (Mar. 4, 1999), 8th Dist. No. 72793, 1999 WL 127252; *State v. Hargis* (Feb. 11, 1999), 8th Dist. No. 72540, 1999 WL 84058.  As the United States Supreme Court explained:

{¶ 25}  "Tribunals passing on the guilt of a defendant always have been hedged in by strict evidentiary procedural limitations.  But both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.  Out-of-court affidavits have been used frequently, and of course in the smaller communities sentencing judges naturally have in mind their knowledge of the personalities and backgrounds of convicted offenders.  * * *

{¶ 26}  "In addition to the historical basis for different evidentiary rules governing trial and sentencing procedures there are sound practical reasons for the distinction.  In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused.  Rules of evidence have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged.  These rules rest in part on a necessity to prevent a time-consuming and confusing trial of collateral issues.  They were also designed to prevent tribunals concerned solely with the issue of guilt of a particular offense from being influenced to convict for that offense by evidence that the defendant had habitually engaged in other misconduct.  A sentencing judge, however, is not confined to the narrow issue of guilt.  His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined.  Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.  And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial.

{¶ 27}  "* * *

{¶ 28} "The considerations we have set out admonish us against treating the due process clause as a uniform command that courts throughout the Nation abandon their age-old practice of seeking information from out-of-court sources to guide their judgment toward a more enlightened and just sentence. * * * The due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due process clause would hinder if not preclude all courts—state and federal—from making progressive efforts to improve the administration of criminal justice." (Footnotes omitted.) Id. at 246–251, 69 S.Ct. 1079, 93 L.Ed. 1337.

{¶ 29} Thus, the purpose behind exempting these sorts of proceedings from the Rules of Evidence is to more fully inform the court of the type of person it has before it in order that the court may tailor the correct punishment for this particular offender. The Ohio Supreme Court adopted *Williams's* rationale in *State v. Downs* (1977), 51 Ohio St.2d 47, 54, 5 O.O.3d 30, 364 N.E.2d 1140. See, also, *State v. Nagle* (June 16, 2000), 11th Dist. No. 99–L–089, 2000 WL 777835.

{¶ 30} Merely because due process does not require strict compliance with the Rules of Evidence does not mean that there are no due process limitations upon the evidence a trial court may rely upon in these proceedings. For instance, if the trial court is relying upon evidence that would not be admissible under the Rules of Evidence, the defendant must still be given an opportunity to challenge the accuracy or materiality of any such information. See *Gardner v. Florida* (1977), 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (holding that in death penalty cases the defendant must be given full disclosure of the information in a presentencing investigation report); *Specht v. Patterson* (1967), 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (defendant must be given opportunity to confront and cross-examine adverse witnesses in special criminal proceedings which may be invoked after conviction of a specified crime); *Williams v. Oklahoma* (1959), 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516, rehearing denied (1959), 359 U.S. 956, 79 S.Ct. 737, 3 L.Ed.2d 763 (noncompliance with state's formal presentence procedure does not violate due process if defendant is given opportunity to rebut the evidence introduced at the sentencing hearing); *State v. Thompson* (Aug. 19, 1988), 11th Dist. No. 1378, at 2–3, 1988 WL 88350 (a rational penal system must have some concern for the accuracy of the information used and should only review material which exhibits a probable degree of accuracy). That is to say, "it is not *per se* prejudicial error for a trial court to base its determination upon evidence which could not be cross-examined" as long as "the offender has the opportunity to attack evidence that contains statements not subject to cross-examination, has the opportunity to call his or her own witnesses, present his or her own evidence, and counter any erroneous information presented by the

state." *State v. Bailey* (July 15, 1999), 10th Dist. No. 98AP–1132, at 2, 1999 WL 553830.

{¶ 31} The point of this discussion is that the Due Process Clause does not require a trial court to provide an offender with an opportunity to confront the evidence against him in the manner contemplated by the Rules of Evidence during proceedings like sexual predator determinations. This is why, pursuant to the plain language of Evid.R. 101(C)(3) and the Ohio Supreme Court's decision in *Cook,* the Rules of Evidence do not apply in a sexual predator determination. This rule exists because, as *Williams* stated, a trial court is interested in knowing the "fullest information possible concerning the defendant's life and characteristics" and, thus, it may rely upon evidence which exhibits a probable degree of accuracy. *Thompson* at 2–3. Now that we know the reason for exempting proceedings such as sexual predator determinations from the strict application of the Rules of Evidence, we must examine the role authentication performs to see whether the rules governing authentication must still be strictly enforced in spite of the relaxation of the other rules of evidence, such as the rules governing hearsay.

{¶ 32} Ohio law has long held that documents must be authenticated before they may be introduced into evidence. For example, in *Ex parte Sheldon* (1878), 34 Ohio St. 319, 324–325, 1878 WL 35, the Ohio Supreme Court held a record that is not authenticated according to law is competent for no purpose whatever. This is because authentication is a form of relevancy conditioned on a preliminary determination of fact. Staff Note to Evid.R. 901(A). "[T]hat is, authentication connects the particular evidence sought to be introduced to the issues or persons involved in the trial. To put it another way, authentication or identification lays the foundation for admissibility of particular evidence." (Footnote omitted.) 43 Ohio Jurisprudence 3d (1983), Evidence and Witnesses, Section 456; Staff Note to Evid.R. 901(A).

{¶ 33} The hurdle the proponent of the document must overcome in order to properly authenticate a document is not great. See *State ex rel. Montgomery v. Villa* (1995), 101 Ohio App.3d 478, 484–485, 655 N.E.2d 1342; *United States v. Dhinsa* (C.A.2, 2001), 243 F.3d 635, 658, certiorari denied (2002), 534 U.S. 897, 122 S.Ct. 219, 151 L.Ed.2d 156; *Kalola v. Eisenberg* (2001), 344 N.J.Super. 198, 205, 781 A.2d 77. For instance, "[w]ith respect to a document attributed to the defendant, the prosecution need only provide a rational basis from which the jury could infer that the document did, in fact, belong to him." *United States v. Maldonado–Rivera* (C.A.2, 1990), 922 F.2d 934, 957, certiorari denied (1991), 501 U.S. 1211, 111 S.Ct. 2811, 115 L.Ed.2d 984; *Kalola* at 205–206, 781 A.2d 77; *Gerald v. State* (2001), 137 Md.App. 295, 304, 768 A.2d 140, certiorari denied

(2001), 364 Md. 462, 773 A.2d 514; *State v. Veglia* (Maine 1993), 620 A.2d 276, 279; *State v. Munoz* (1979), 70 Ill.App.3d 76, 86, 26 Ill.Dec. 509, 388 N.E.2d 133.

{¶ 34} "[T]he showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility. Rather, there need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility. Once a prima facie case is made, the evidence goes to the jury and it is a jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic." *Montgomery* at 484–485, 655 N.E.2d 1342, quoting *United States v. Reilly* (C.A.3, 1994), 33 F.3d 1396, 1404; *United States v. Demjanjuk* (Feb. 21, 2002), U.S. Dist. N.D. Ohio No. 1:99CV1193, 2002 WL 544622.

{¶ 35} Thus, the purpose behind authentication is to connect the particular piece of evidence sought to be introduced to the facts in the case by giving some indication the evidence is relevant and reliable. The ultimate decision on the weight to be given to that piece of evidence is left to the trier of fact.

{¶ 36} Because the purpose behind authentication is to merely give some indication of the reliability and relevance of the evidence sought to be introduced, there is no need to strictly apply the Rules of Evidence governing authentication in proceedings like sexual predator determinations. As the United States Supreme Court explained in *Williams*, in these types of proceedings the trial court's role is to tailor the consequences of the offender's criminal conduct to the defendant's life and characteristics. Thus, it is not focused on the narrow issues of, in a criminal case, guilt, or, in a civil case, liability. Because the trial court is conducting a broader examination into the defendant's life and characteristics, it is not confined to the Rules of Evidence and may rely on evidence that demonstrates some indicia of reliability when acting as the trier of fact. We see no reason to limit the trial court's reliance on evidence which demonstrates some indicia of reliability to properly authenticated evidence as authentication merely is a way of demonstrating some indicia of reliability. Thus, we hold that in sexual predator determination hearings, a trial court may rely on unauthenticated evidence as long as that evidence demonstrates some indicia of reliability.

{¶ 37} Turning to the facts of this case, the trial court properly relied upon the institutional report admitted into evidence as it has some indicia of reliability. Although it may not be self-authenticating under the Rules of Evidence, the fact that this document appears to be a computer printout of the department's records is sufficient to demonstrate its reliability for the purposes of a sexual predator determination. See *Lane* and *Smith*. Furthermore, Brown never challenged the accuracy of that report at either the trial or appellate level. Due process is not denied a defendant who is given the opportunity but fails to challenge the

accuracy of unauthenticated statements admitted in a sexual predator hearing. See *State v. Williams* (1986), 23 Ohio St.3d 16, 23, 23 OBR 13, 490 N.E.2d 906, certiorari denied (1987), 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699. Accordingly, the trial court did not abuse its discretion when it allowed this institutional report into evidence during Brown's sexual predator hearing.

{¶ 38} Brown next challenges the trial court's decision to allow the state to introduce unauthenticated copies of letters he purportedly wrote to the trial court. Although neither party makes the argument that the letters were properly authenticated, it appears that they may have been authenticated pursuant to Evid.R. 901(B)(4). Furthermore, the state's argument mirrors the reasons given in case law why the letters are authentic under Evid.R. 901(B)(4). Of course, as stated above, evidence need not be properly authenticated in order to be admissible in sexual predator hearings. However, if the challenged evidentiary matter is admissible under the Rules of Evidence, then it would demonstrate some indicia of reliability for the purposes of sexual predator determinations.

{¶ 39} Evid.R. 901 provides examples of the manner in which evidence may be properly authenticated. In one such example, the rule states that evidence is properly authenticated when its appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances, are sufficient to support a finding that the evidence is what its proponent claims. Evid.R. 901(B)(4). The "distinctive characteristics" method of authenticating evidence has been invoked in only a few cases in Ohio. *State v. Wheeler* (July 16, 1993), 2d Dist. No. 12290, at 2, 1993 WL 265133. However, it is clear that "a letter may be authenticated by evidence of its distinctive contents such as facts contained in the missive that only the writer may know." *State v. Chamberlain* (July 25, 1991), 8th Dist. No. 58949, at 4, 1991 WL 144181; *State v. Weaver* (May 24, 1995), 9th Dist. No. 94CA005864, 1995 WL 314672.

{¶ 40} In most cases, when there is some indication the letter in question may be authentic, it is introduced into evidence. Id.; see, also, *Gerald*; *Kalola*; *Robinson v. State* (May 12, 2000), 7th Tex. Dist. No. 07–99–0068–CR, 2000 WL 622945; 5 Weinstein & Berger, Weinstein's Evidence P901(b)(4)[01], at 901–47; C. Mueller & L. Kirkpatrick, Evidence 1127 (2d Ed.1999). Those indications of authenticity may be found in the contents of the document or on the letter's envelope. Id.; *United States v. Moss* (Dec. 4, 1995), C.A.9 No. 95–30066, 77 F.3d 491. Thus, a document may be properly authenticated and admissible against a particular criminal defendant even when the author of the document is unknown, if the circumstances demonstrate that, for instance, the document must have been authored by the defendant or a co-conspirator. *Maldonado–Rivera* at 957–958; *United States v. Wilson* (C.A.8, 1976), 532 F.2d 641, certiorari denied (1976), 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117. Likewise, the introduction of an

anonymous letter not written in the defendant's handwriting may be properly authenticated as originating from the defendant if the circumstances show sufficient indicia of authorship. *United States v. Bello–Perez* (C.A.1, 1992), 977 F.2d 664; *Munoz.* Indeed, at least one court has concluded that a letter's physical appearance and its return address alone may be sufficient to authenticate a letter. *Veglia* at 279. These documents are normally admissible because the challenges to them normally go to the weight of the evidence the trier of fact should place on the evidence rather than their admissibility.

{¶ 41} In this case, the letters contain several characteristics which lead this court to conclude that the letters would be authentic pursuant to Evid.R. 901(B)(4). The first letter, dated March 20, 2001, was addressed to the trial judge presiding over Brown's sexual predator hearing, mentioned that a hearing scheduled in this case did not take place on the scheduled date, talked about Brown's history in the correctional system, discussed issues to be addressed at the sexual predator hearing, spoke about witnesses from Brown's original trial, and was signed by "James Brown." The letter's return address was the Mahoning County Jail, where Brown was incarcerated. Finally, the envelope attached to the letter displayed a postmark dated March 21, 2001, and a stamp stating "Inmate Correspondence."

{¶ 42} The second letter, dated March 29, 2001, contains handwriting that appears to be similar to that in the March 20, 2001 letter. In addition, it mentions a continuance of a hearing, the case numbers of the present proceeding, his sentence, the name of the trial judge who presided over his original trial, the names of witnesses involved in that trial, and incidents contained in the institutional report submitted by the state. Like the first letter, this letter also was addressed to the trial judge presiding over Brown's sexual predator hearing, contained the same return address, and was signed by "James Brown." Its envelope was postmarked March 30, 2001, and also was stamped "Inmate Correspondence." Thus, these letters contain prima facie evidence that they were authored by Brown which would make them admissible under Evid.R. 901(B)(4) and, therefore, demonstrate some indicia of reliability. The trial court did not abuse its discretion when it admitted the letters into evidence.

{¶ 43} In his final argument regarding the admissibility of various types of evidence, Brown argues that the trial court erred in relying upon the postsentence investigation report. Ohio courts have unanimously found that postsentence investigation reports are a reliable form of hearsay admissible in a sexual predator proceeding. See *State v. Miller* (May 17, 2001), 8th Dist. No. 78032, 2001 WL 528020; *State v. Smith,* 3d Dist. No. 3–2000–20, 2000 WL 1890407; *State v. Davis* (Aug. 10, 2000), 10th Dist. No. 00AP–12, 2000 WL 1125691. Thus, Brown does not challenge the admissibility of postsentence

investigation reports in general, nor does he argue that any of the specific information in this postsentence investigation report is inaccurate. Rather, Brown argues that "[t]he passage of time between the date on which the crimes were committed in this matter and the preparation of the Post–Sentence Investigation report, in and of itself, renders the report unreliable."

{¶ 44} A review of the postsentence investigation report does not reveal how the passage of time would have significantly affected the reliability of the report. The information regarding the disposition of Brown's case would be unaffected by the passage of time as it would all be on record. The details concerning the offense were all gleaned from the "prior case file material" on one of Brown's co-defendants. The report then states that, according to police department records and the coroner's report, the victim was dead on arrival at the hospital and the cause of his death. The bulk of the report consists of statements witnesses, co-defendants, and Brown made to the police within 17 months of the commission of the crime. Because all of the information contained in the report was available either before, or very soon after, Brown was convicted of and sentenced for the offense, there is no reason to think that the passage of time between the date upon which Brown was convicted and the date when the postsentence report was prepared would render the report unreliable. Accordingly, the trial court did not abuse its discretion when it relied upon that postsentence investigation report when determining whether Brown was a sexual predator.

{¶ 45} In conclusion, pursuant to Evid.R. 101(C) and the surrounding case law, the Rules of Evidence do not strictly apply in sexual predator proceedings. However, to comply with due process, evidence must have some indicia of reliability before it is admissible in those proceedings. In this case, the department's institutional report on Brown's behavior while incarcerated would have some indicia of reliability even though it was not authenticated in accordance with the Rules of Evidence. The letters that Brown allegedly wrote to the trial court also contained some indicia of reliability as they would be properly authenticated under Evid.R. 901(B)(4) if those rules did apply. Finally, there is no reason to doubt the reliability of the postsentence investigation report the trial court relied upon when making its sexual predator determination, as it was based on statements made at the time of the crime or very soon thereafter. Because the trial court did not abuse its discretion when allowing these documents into evidence, Brown's second assignment of error is meritless.

{¶ 46} In his third and final assignment of error, Brown argues:

{¶ 47} "The trial court erred in determining that the appellant should be classified as a sexual predator as the state failed to prove by clear and convincing evidence that the appellant is a sexual predator as defined in Ohio Revised Code 2950.09(E)."

{¶ 48}  The General Assembly has defined a sexual predator as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E).  In order to classify an offender as a sexual predator, the trial court must conduct a sexual predator hearing.  R.C. 2950.09(B)(1).

{¶ 49}  When making its sexual predator determination, R.C. 2950.09(B)(2) provides the following nonexhaustive list of factors a court must consider:  the offender's age;  the offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;  the age of the victim of the sexually oriented offense for which sentence is to be imposed;  whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;  whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;  if the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;  any mental illness or mental disability of the offender;  the nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;  whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;  and any additional behavioral characteristics that contribute to the offender's conduct.  Id.

{¶ 50}  The factors in R.C. 2950.09(B)(2) are merely guidelines that provide a framework to assist judges making a sexual predator determination and do not control a judge's discretion.  *State v. Thompson* (2001), 92 Ohio St.3d 584, 587, 752 N.E.2d 276.  Whether someone is a sexual predator is an inquiry that turns on its own facts.  *State v. Thompson* (Sept. 21, 2001), 7th Dist. No. 99JE51, at 4, 2001 WL 1126660. R.C. 2950.09(B)(2) does not require that every factor be met before a trial court may find an offender to be a sexual predator;  rather, it requires that the court consider those factors relevant to the instant case.  *Cook* at 426, 700 N.E.2d 570;  *State v. Grimes* (2001), 143 Ohio App.3d 86, 89, 757 N.E.2d 413.  Accordingly, the trial court is under no obligation to "tally up" the factors in any particular fashion and may designate an offender as a sexual predator even if only one or two statutory factors are present, so long as the totality of the relevant circumstances provides clear and convincing evidence that the offender is likely to commit a future sexually oriented offense.  *State v. Hardie* (2001), 141 Ohio App.3d 1, 5, 749 N.E.2d 792.

{¶ 51} At the conclusion of the sexual predator hearing, the offender will be classified as a sexual predator only if the court so finds by clear and convincing evidence. Evidence is clear and convincing if it provides in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Cincinnati Bar Assn. v. Massengale* (1991), 58 Ohio St.3d 121, 122, 568 N.E.2d 1222. While clear and convincing evidence is more than a preponderance of the evidence, it does not rise to the level of evidence beyond a reasonable doubt. *State v. Ingram* (1992), 82 Ohio App.3d 341, 346, 612 N.E.2d 454. When reviewing an issue that must be supported by clear and convincing evidence, an appellate court must determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. *State v. Kelly* (2001), 142 Ohio App.3d 179, 183, 754 N.E.2d 1273.

{¶ 52} A sexually oriented offense includes any violation of R.C. 2907.02, regardless of the age of the victim. R.C. 2950.01(D)(1). In the present case, Brown was convicted of rape, a violation of R.C. 2907.02 and, therefore, was convicted of a sexually oriented offense. Accordingly, the question before us in this assignment of error is whether there is clear and convincing evidence that Brown is likely to engage in one or more sexually oriented offenses in the future.

{¶ 53} The underlying facts of the case can be gleaned from the postsentence investigation report. On the night of June 16, 1977, when Brown was sixteen, he and his friends were driving around Youngstown, Ohio, looking for something to do. One of them had a gun, so they held up a man on the street. After taking the man's money and beating him up, the group proceeded to Market Street, the next street over. There they saw the approximately 30-year-old man passed out drunk in the front seat of his car. They forced open the door of the car and put a gun to the man's head. They then drove with the victim to another location where they beat him with fists and the butt of the gun. The victim was robbed of his money and placed in the trunk of his car. The group then drove the victim to Stambaugh Field in Youngstown, Ohio, where he was forced to walk to the baseball field area. The group beat the man again. One of Brown's co-defendants urinated on the victim, and Brown forced his penis into the man's mouth and forced him to perform oral sex. The victim's shirt, belt, and shoes were removed and he was choked with his shirt and belt. This did not kill him, so one of the codefendants choked the man with his hands. That person then pulled out a pocket-knife, and each member of the group took turns stabbing the man in the heart and throat. Brown jumped on the victim in order to make him bleed faster. Brown also tried to cut the victim's penis off with the knife. The group left the victim for dead and threw his clothing in a dumpster. Brown was then taken home. One of the police officers who testified at the hearing stated

that he remembered the event due to the particular gruesomeness of the crime even though it had occurred twenty-four years before the hearing.

{¶ 54} As Brown was sixteen when he committed the offense, his case originated in juvenile court. However, he was eventually bound over to adult court. Before that happened, Brown was subjected to a psychiatric evaluation for a bind-over hearing. The psychiatrist who conducted that evaluation examined Brown's psychosexual development. According to the evaluation, Brown claimed that he had his first heterosexual experience when he was fourteen years old, and he denied any form of homosexual experiences. The psychiatrist felt that Brown was not relating truthfully about his psychosexual behavior and development. Regarding Brown's mental status, the psychiatrist found:

{¶ 55} "[He was] a rather uncooperative, impulsive and considerably hostile youth. He doesn't want to talk about his problems and that he is not guilty of anything. He is seen as a somewhat insecure, self-centered, hostile, and anti-authoritarian youth. He said there is a lot of lying on the part of other people indicating his court papers were written by 'a White man.' He would not elaborate on any problems. He uses denial and projection."

{¶ 56} Prior to the commission of the instant offense, Brown had a juvenile record consisting of two counts of breaking and entering, a curfew violation, and a criminal damaging charge. While incarcerated, he has been transferred for disciplinary reasons twice. Although there is no indication in any other place on the record why he was disciplined, in his letters written to the court, Brown explains that he was disciplined for fighting.

{¶ 57} The only other evidence on record that could be relevant to Brown's sexual predator status are the two letters he wrote to the trial court. In the first letter, he makes the following statement:

{¶ 58} "Those who lied about a Joseph Delisio rape have paid for their lye [sic] by anus and cap experiments. I am not homosexual anal wise or cap wise. I believe William Robinson and Clarence Thompson need to be tried over again in the Joseph Delisio case. I think perjury should be the issue in a legal nutshell. I think the case is a perfect case for a best seller book company. Because others were freed from or by their testimony and still got involved in other murders.

{¶ 59} "I believe crime or most crimes, start from a sex ritual. I believe aggravated murder in most cases start [sic] from a homosexual ritual. I believe someone in our case took rituals as children. But I am not sure.

{¶ 60} "I believe White Supremacist Judge theory was an anus sex ritual as well. I am well aware I have white descendant. Joseph Delisio was my descendant. He looked like my brother King Steven. Why would I killed [sic] my descendant."

{¶ 61} In this case, many of the factors found in R.C. 2950.09(B)(2) weigh against labeling Brown as a sexual predator. For instance, neither Brown's age at the time of the offense, sixteen, or the age of the victim, 30, lead to the conclusion that Brown is likely to commit another sexually oriented offense in the future. R.C. 2950.09(B)(2)(a) and (c). In addition, the instant offense did not involve multiple victims, nor is there any evidence that Brown suffers from any mental illness or disability. R.C. 2950.09(B)(2)(g). Finally, although Brown did have a juvenile record prior to the offense, none of those charges involved sexually oriented offenses. R.C. 2950.09(B)(2)(b) and (f).

{¶ 62} However, while the factors listed above weigh against Brown's being labeled a sexual predator, other factors clearly weigh in favor of designating him a sexual predator. For example, Brown concedes that his actions were cruel, a factor found in R.C. 2950.09(B)(2)(i). Likewise, it is undisputed that the victim was drunk when Brown and his codefendants began their attack. While it is more serious if the offender is the one who provided the drugs or alcohol to the victim, the fact that the offender took advantage of the victim's vulnerability is a factor the trial court can take into consideration when making a sexual predator determination. See R.C. 2950.09(B)(2)(e); *State v. Maye* (1998), 129 Ohio App.3d 165, 717 N.E.2d 402; *State v. Hickman* (Mar. 21, 2002), 10th Dist. No. 01AP–841, 2002 WL 433600; *State v. McCullough* (Oct. 15, 2001), 12th Dist. No. CA2001–02–004, 2001 WL 1218915; *State v. Moodie* (June 30, 2000), 7th Dist. No. 99 JE 56, 2000 WL 875321; *State v. Greathouse* (June 29, 2000), 7th Dist. No. 99 JE 58, 2000 WL 875322. In addition, it is clear that there is no evidence on the record of any rehabilitative efforts on Brown's part in the years since his conviction. R.C. 2950.09(B)(2)(f). Indeed, when taken together, the psychiatric evaluation completed in 1977 and the letters sent to the trial court in 2001 indicate that Brown has the same attitudes and beliefs now as he did then. Finally, we note the sexual nature of Brown's conduct as a whole that night. Not only did Brown force the victim to perform oral sex on him, but Brown attempted to cut off the victim's penis, apparently as a trophy. The fact that Brown saw the torture and killing of the victim as sexual in nature is confirmed by the content of Brown's letters to the trial court wherein he states, "I believe crime or most crimes, start from a sex ritual. I believe aggravated murder in most cases start [sic] from a homosexual ritual."

{¶ 63} The level of cruelty involved in this offense, the sexual nature of Brown's conduct as a whole, the lack of rehabilitative efforts by Brown, the fact that Brown took advantage of the victim's vulnerability due to his drunkenness, and the additional behavioral characteristics exhibited in the letters Brown sent to the trial court all support the trial court's conclusion that Brown is a sexual predator. The trial court's determination that Brown is a sexual predator is

supported by clear and convincing evidence. Thus, Brown's third assignment of error is meritless.

{¶ 64} In conclusion, Brown's first assignment of error is meritless, as case law indicates that the department's recommendation is not a jurisdictional requirement that must be met before a trial court may conduct a sexual predator determination. His second assignment of error is also meritless, as the Rules of Evidence are relaxed in sexual predator proceedings and evidence is admissible as long as it has some indicia of reliability. Finally, Brown's third assignment of error is meritless, as the trial court's determination that Brown is a sexual predator is supported by clear and convincing evidence. The trial court's decision is affirmed.

Judgment affirmed.

VUKOVICH and GENE DONOFRIO, JJ., concur.