[Cite as *State v. Greiner* , 2018-Ohio-3310.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106426**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**JEFFREY HART GREINER**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-603761-A

**BEFORE:** Stewart, J., E.T. Gallagher, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 16, 2018

**ATTORNEY FOR APPELLANT**

Marcus S. Sidoti
Jordan & Sidoti L.L.P.
Terminal Tower, Suite 1900
50 Public Square
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Daniel A. Cleary
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, J.:

{¶1} Defendant-appellant Jeffrey Hart Greiner defended a charge that he purposely shot and killed his girlfriend in his apartment by claiming that he accidentally fired the shot that killed her. Greiner's initial statements to the police cast doubt on that claim: he first told the police that the victim had been shot in a drive-by shooting and then changed his story to say that she accidentally shot herself. In addition to the conflicting stories, the police discovered that Greiner wrote a letter to the victim in which he professed his love for her and his desire to marry her, but she had apparently spurned his proposal in order to move out of the country and engage in an evangelical mission for her church. On this evidence, a jury convicted Greiner of murder, negligent homicide, felonious assault, and tampering with evidence, along with associated firearm specifications.

## I. Admission of Evidence

{¶2} Greiner's first assignment of error relates to a letter found on the night stand in the bedroom of his apartment. The unsigned, undated, and unaddressed letter stated, "give me the chance to be with you again," that "I promise on everything I love not to ruin it or break that trust again," and that "I'm going to be the one I said I was going to be in the beginning." Although Greiner claims that the letter was erroneously admitted because it is hearsay, the substance of his argument is that the state failed to prove that he wrote the letter, so the letter could not be admitted into evidence as an admission by a party opponent under Evid.R. 801(D)(2).

{¶3} Authentication is merely a means of proving that something is what its proponent claims it to be. *See* Evid.R. 901(A). When the evidence consists of an unsigned letter, it may be authenticated if properly connected with a person as being his actual letter. *State v. Hinkston*, 1st Dist. Hamilton Nos. C-140448 and C-140449, 2015-Ohio-3851, ¶ 15; *State v. Hawkins*, 8th

Dist. Cuyahoga No. 81646, 2003-Ohio-4934, ¶ 14. As the proponent of the letter, the state had to provide a rational basis from which the jury could infer that Greiner wrote the letter. *State v. Brown*, 151 Ohio App.3d 36, 2002-Ohio-5207, 783 N.E.2d 539, ¶ 32 (7th Dist.). This is considered a "low threshold" that requires the proponent of the evidence to make a "a prima facie showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence." *State v. Powell*, 8th Dist. Cuyahoga No. 99386, 2014-Ohio-2048, ¶ 33, citing *State v. Toudle*, 8th Dist. Cuyahoga No. 98609, 2013-Ohio-1548, ¶ 21.

{¶4} The victim's mother testified that Greiner and the victim had been in a committed relationship for six months at the time of the murder. Greiner had purchased an engagement ring and the victim's mother knew that Greiner planned to ask the victim to marry him. The contents of the letter — a profession of his love and his statement that "I want to be your husband and the father to your children" — were consistent with what the victim's mother knew about his relationship to the victim. This was a rational basis for finding that Greiner wrote the letter. In addition, there was no contrary indication that the letter could have been written by any other person — the letter was found on the night stand in Greiner's bedroom and Greiner did not have any roommates. With the letter mirroring events occurring in Grenier's relationship with the victim and there was no reason to believe that any other person might have left the letter in the apartment, the court did not err by admitting the letter into evidence.

## II. Ineffective Assistance of Counsel

{¶5} Greiner's second assignment of error is that defense counsel was ineffective for failing to seek suppression of his nonMirandized statement to the police that the victim had been shot in a drive-by shooting. He claims that he was in custody at the time because the police did

not consider him free to leave, thus he maintains that he was the victim of a "question first, Mirandize later" method of questioning.

{¶6} The "failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Greiner can prevail on his ineffective assistance of counsel claim only if he can show that there was a basis to suppress the evidence and that had the evidence been suppressed, there was a reasonable probability that he would not have been convicted. *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 94.

{¶7} Greiner's basis for claiming that his statement should have been suppressed is that the police questioned him about the shooting without first advising him of his Fifth Amendment right to remain silent. That right applies only when a suspect is both in custody and about to be subjected to police interrogation. *Illinois v. Perkins*, 496 U.S. 292, 297, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990) ("It is the premise of *Miranda* that the danger of coercion results from the interaction of custody and official interrogation."). When the police first arrive at the scene of a crime, questions intended to direct the course of their initial investigation are not custodial. *Miranda v. Arizona*, 384 U.S. 436, 477, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact finding process is not affected by our holding."); *State v. Carter*, 8th Dist. Cuyahoga No. 104653, 2017-Ohio-5573, ¶ 56.

{¶8} The evidence showed that the police responded to an emergency call of "[a] guy reporting that his girlfriend was shot outside the apartment from a car, silver four-door." The first police officer on the scene testified that he entered Greiner's apartment and found the victim lying on the bedroom floor. She had been shot in the neck and had no pulse. The officer

debated whether to perform CPR (he feared doing so would push more blood out of the neck wound). He then heard other emergency responders coming and told Greiner to stand in the living room. The officer then asked Greiner, "[t]ell me what happened, really quick, what happened?" Greiner replied that the victim had been "shot by an unknown person that left in a vehicle that was described as a silver four-door car that left the complex * * *." The officer's question was plainly intended to aid the course of his investigation and was not interrogation of Greiner.

{¶9} In reaching our conclusion, we reject Greiner's assertion that he was in custody because the officer did not consider Greiner free to leave the premises. The officer's testimony made it clear that he found Greiner's version of events was implausible because trees blocking the outside view meant that Greiner could not have seen the car travel in the direction he claimed and because there was no trail of blood consistent with the victim being shot in a spot where a bullet fired from outside the apartment could have struck her. It was only after Greiner made this statement that the officer decided that Greiner was not free to leave.

{¶10} Regardless of whether Greiner had been Mirandized before making his statement to the responding police officer, he made the same statement in his 911 call. The 911 dispatcher testified that after taking Greiner's call, she put out a call for all units to be on the lookout for a vehicle that matched the vehicle described by Greiner. Another police officer who responded to the scene testified that he received a call "that there was an unknown shooter that shot from the vehicle and left the scene." Importantly, Greiner's trial strategy of accident was such that he admitted making the 911 call. So there could have been no prejudice from defense counsel's failing to seek suppression of a statement that would have been admitted in any event.

### III. Manifest Weight of the Evidence

**{¶11}** Greiner's third assignment of error is that the jury verdict on Count 1 of the indictment — that Greiner purposely caused the victim's death in violation of R.C. 2903.02(A) — was against the manifest weight of the evidence. Greiner argues that the evidence showed he accidentally shot the victim and that we should exercise our constitutional authority to conclude that the jury lost it was by finding him guilty and reverse for a new trial.

**{¶12}** The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340, 515 N.E.2d 1009 (9th Dist.1986). The use of the word "manifest" means that the trier-of-fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶13}** The state presented a circumstantial case supporting a conviction for purposeful murder. Greiner made it clear that he desired to marry the victim. The victim's mother (who did not approve of Greiner), said that the victim would not marry Greiner and instead planned to leave the country. The letter found in Greiner's bedroom indicated some prior difficulty in the relationship ("I promise on everything I love not to ruin it or break that trust again"). From this letter the jury could infer motive for murder: Greiner may have committed some transgression

against the victim, prompting her to leave the country and spurning his apology and marriage proposal.

**{¶14}** Greiner's claim of accidental shooting was undermined by his admitted failure to tell the truth when first asked about the shooting. Greiner initially concocted a story about a drive-by shooting (that would have been physically impossible to occur), then claimed that the victim accidentally shot herself. During his interrogation by the police, Greiner said that he was stationed in Iraq while serving in the military. This, too, was a lie — he never served in the military. As an admitted liar, Greiner had no realistic hope that the jury would somehow conclude that his trial theory of accident was the true version of events. The initial lie was detrimental to Greiner because the jury could reasonably believe that a person who had accidently shot the woman he claimed to love would have simply reported the accident. This lie was compounded by his decision to hide a gun under the mattress in the second bedroom.

**{¶15}** Finally, Greiner's claim that the jury's verdict is against the manifest weight of the evidence suffers from his failure to present any evidence. Greiner did not testify and his only witness was an expert pathologist whose testimony verified the findings of the county coroner. In short, Greiner offered no evidence to support an accidental shooting that would weigh against the state's evidence. The jury could have adversely viewed Greiner's failure to offer evidence in support of his defense of accident. *State v. Collins*, 89 Ohio St.3d 524, 527-528, 733 N.E.2d 1118 (2000). The jury did not lose its way by finding Greiner guilty.

**{¶16}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

EILEEN T. GALLAGHER, P.J., and
SEAN C. GALLAGHER, J., CONCUR