JOURNAL ENTRY and OPINION.
{¶ 1} Thomas Grahek ("Grahek") appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of nine counts of rape in connection with the state's charge that he committed the offense against his daughter on nine different occasions. He also appeals the court's classification of him as a sexual predator. On appeal, he assigns eight errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm his conviction and his classification as a sexual predator.
 {¶ 3} The record reflects that based on allegations that Grahek sexually abused his daughter T. during a period between November 30, 1996 and December 31, 1998, a grand jury indicted Grahek on nine counts of rape and nine counts of gross sexual imposition. The state subsequently dismissed the nine counts of gross sexual imposition and a jury trial on the rape counts followed.
 {¶ 4} At trial, T. Grahek testified that her father, Thomas Grahek, forced her to engage in vaginal intercourse, anal intercourse, and oral sex with him on multiple occasions. Although she could not recall all the incidents, she was able to recollect that he had vaginal intercourse, anal intercourse, or oral sex with her in his bedroom on at least three separate occasions, in the bathroom on at least three separate occasions, and on the living room couch on at least four occasions. She also testified that she had related these incidents to her mother, aunt, foster mother, and case worker, and further testified that her brothers Steven and Shawn witnessed some of the incidents.
 {¶ 5} Shawn, T.'s brother, testified that on three occasions he heard T. scream and observed through the bathroom window his father attempting to rape T.
 {¶ 6} Steven, also T.'s brother, testified that he had seen his father kneel over his sister while she lay on the floor and had given the police a statement regarding what he saw. When he resumed his testimony the next day, however, he recanted that testimony, stating that he made the statement incriminating his father because he was mad at him for not buying him a pair of Nikes. The court then took a recess, explained to Steven the offense of perjury, and appointed him a public defender. The record then reflects that during the recess, Steven's appointed counsel informed the court that Steven indicated to him that he had lied while testifying earlier that day. When Steven took the witness stand again, he admitted he lied and testified consistently with what he had stated in the previous day.
 {¶ 7} In addition, Laurel Shaffer, T.'s foster mother, testified T. had told her about the alleged rapes and she contacted T.'s social worker, who then contacted the police.
 {¶ 8} Dawn Discenza, a social worker for Cuyahoga County Children and Family Services, testified T. related the incidents to her and when she interviewed Shawn, he corroborated T.'s story.
 {¶ 9} Sharon Grahek, T.'s mother, testified that T. told her that her dad made her "suck his private."
 {¶ 10} Donna Abbott, a nurse at Akron General Children's Hospital who examined T. for a determination of sexual abuse, testified that T. told her that her father had vaginal intercourse with her on five occasions, oral sex on two occasions, and anal intercourse on two occasions. She testified to a reasonable degree of medical certainty that T. was sexually abused.
 {¶ 11} Following trial, the jury returned a guilty verdict on all nine counts of rape. The court then imposed the maximum sentence of 10 years on each count, to run consecutively. The court also designated Grahek a sexual predator. Grahek now appeals.
 {¶ 12} In his first and third assignments of error, Grahek contends the court erred in failing to inquire into the competency of the three state witnesses: T., Steven, and Shawn. As these alleged errors require a similar analysis, we address them jointly.
 {¶ 13} We begin by noting that Grahek failed to object to the testimony at trial he now challenges. We therefore review the alleged errors to determine whether they constitute plain errors.
 {¶ 14} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B).[2] Notice of waived errors may be considered only if they can be characterized as plain errors.[3] The plain error test is a strict one. An alleged error does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise.[4] The plain error rule is not to be invoked lightly; rather, notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.[5]
 {¶ 15} For us to review Grahek's claims under a plain error analysis, we must first determine if an error existed in the first place in the court's failing to inquire into these witnesses' competency to testify.
 {¶ 16} We begin with Evid.R. 601, which establishes the general rule of competency in Ohio courts. That rule provides in pertinent part:
 {¶ 17} "Every person is competent to be a witness except:
 {¶ 18} "(A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
 {¶ 19} A similar standard is set forth in R.C. 2317.01, which states:
 {¶ 20} "All persons are competent witnesses except those of unsound mind and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
 {¶ 21} "When passing on the competency of witnesses, reviewing courts must, of necessity, allow trial courts a wide latitude within which to exercise their discretion. The appearance of the witness, his or her composure, general demeanor, and indications of coaching or instruction as to answers are often as significant as the words used in answering questions when determining competency."[6]
 {¶ 22} Therefore, we review the court's competency determination under an abuse of discretion standard; absent an abuse of discretion, competency determinations of the trial judge will not be disturbed on appeal.[7] In State v. Bradley,[8] the court reviewed a defendant's claim challenging the competency of a witness; it stated: "the trial judge, who saw the [witnesses] and heard their testimony and passed on their competency, was in a far better position to judge their competency than is this court, which only reads their testimony from the record."[9]
 {¶ 23} Here, T. was between 12 and 14 at the time of the alleged offenses and 18 when she testified at trial. Rather than challenging her incompetence on the ground of age, Grahek claims she was incompetent because of her "unsound mind."
 {¶ 24} That term, as defined R.C. 1.02(C), includes all forms of mental retardation. Being of unsound mind, however, does not automatically render a witness incompetent to testify.[10] In Bradley, the court reiterated the standard for competency first announced in Statev. Wildman:[11] "A person, who is able to correctly state matters which have come within his perception with respect to the issues involved and appreciates and understands the nature and obligation of an oath, is a competent witness notwithstanding some unsoundness of mind."
 {¶ 25} Moreover, as interpreted by the court in State v. Said,[12]
competency under Evid.R. 601(A) contemplates several characteristics, which can be broken down into three elements: first, the individual must have the ability to receive accurate impressions of fact; second, the individual must be able to accurately recollect those impressions; third, the individual must be able to relate those impressions truthfully.[13]
 {¶ 26} Here, Grahek claims the court should have inquired into T.'s competency to testify because she has an I.Q. of 67 and because she could not recall the frequency of the alleged rapes or the years when these incidents occurred.
 {¶ 27} Our review of T.'s testimony indicates that she was able to recall details of the incidents, including the locations where they occurred, the pain she felt during the vaginal and anal intercourse, the remarks Grahek made during the incidents, the manner in which he forced her to remove her clothes, whether he ejaculated, and how he disposed of his semen. Her accounts of the incidents reflect her ability to receive, recollect, and relate facts truthfully, if not perfectly. Although she could not recall the years when the incidents took place, imperfect recollection goes to the credibility of a witness; it does not, in itself, render a witness incompetent.
 {¶ 28} Because the trial court was in a much better position than we are to gauge her understanding of the events and her capacity to testify, and because the record supports its determination, we conclude that the trial court did not abuse its discretion in allowing T. to testify. As we find no error, we do not reach a plain error analysis for this claim.
 {¶ 29} Grahek cites State v. Kinney,[14] for his claim that the court's failure to inquire into T.'s competency constituted a plain error. There, the court held that the trial court erred in failing to conduct an inquiry into the competency of a ten-year-old rape victim. Prior to the child victim taking the witness stand, her mother testified that her daughter was mentally retarded and that her I.Q. was lower than fifty-eight. The mother also stated that her daughter had a tendency to make up stories as a way of reaching out for help. In addition, a police officer testified that during his interview with the child, she confused the rape with a separate incident. Based on this testimony, the court of appeals concluded that because the child's competency was "clearly called into question," the trial court's failure to conduct a voir dire on the issue of her competency constituted prejudicial error.
 {¶ 30} Grahek's reliance on Kinney is misplaced. In that case, the trial court had a sua sponte duty to inquire into the witness's competency because the record demonstrated that her competency was "clearly called into question by the time she was called to the stand."[15]
 {¶ 31} In the instant case, the only indication that T. might be of unsound mind came from the testimony of Laurel Shaffer, T.'s foster mother, who testified that T. has an IQ of 67. While we recognize that R.C. 1.02(C) includes all forms of mental retardation in the term "unsound mind," we cannot find that this testimony, without more, indicates that T.'s competency was clearly called into question and warrants a competency determination in accordance with Kinney.[16]
 {¶ 32} Accordingly, Grahek's first assigned error is overruled.
 {¶ 33} In his third assignment of error, Grahek complains the court committed a plain error when it failed to inquire into Shawn and Steven's competency to testify.
 {¶ 34} Grahek contends the court should have inquired into Shawns' competency because Shawn, according to his own testimony, had been placed in a detention home for theft and breaking and entering, had been enrolled in a "severe behavior handicap" group at school, suffered attention deficit disorder, was on medication for that condition, and also admitted to lie habitually.
 {¶ 35} Grahek also contends that the court should have inquired into Steven's competency because Steven testified he had learning problems, was easily influenced by people in authority, and would tell people whatever they wanted to hear. He also made contradictory statements and admitted he had lied earlier on the witness stand.
 {¶ 36} Grahek is misguided in these contentions, because these testimonies raised questions of credibility, not competence. Credibility and competence involve entirely different assessments. While the determination of competence is made by the court, credibility involves an evaluation to be made by the jury. As the record reflects, both witnesses were appropriately subjected to extensive cross-examination for the truthfulness of their testimony.
 {¶ 37} Because the record does not demonstrate any basis of Shawn or Steven's incompetence under Evid.R. 601(A), Grahek's contention that the court erred in failing to inquire into their competence to testify is without merit.
 {¶ 38} Accordingly, we overrule Grahek's third assigned error.
 {¶ 39} Grahek's second assigned error relates to the court's admission of photographs depicting his apartment's layout, offered by the state to corroborate Shawn's testimony that he had seen from the bedroom window his father attempting to rape T. in the bathroom. Grahek argues these photographs, taken at the time of trial, were neither authenticated nor relevant because they did not depict the premises at the time the alleged rapes occurred; he refers us to the testimony of Betty Cumberledge, his niece, who testified that the photographs of the bathroom looked different from what she remembered it to look like.
 {¶ 40} We begin our review of this claim by noting that a trial court enjoys broad discretion in admitting or excluding evidence and an appellate court will not disturb the exercise of that discretion absent a showing that the accused has suffered material prejudice.[17]
 {¶ 41} Furthermore, Evid.R. 401 provides:
 {¶ 42} "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
 {¶ 43} Moreover, under Evid.R.901(A), "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."
 {¶ 44} Here, the record reflects that Detective Strickler testified that he took the photographs of Graheks' apartment hours before he testified; he further testified that the photographs portrayed the layout of the apartment and explained that because of the placement of the bathroom window and the bedroom window, one could observe the inside of the bathroom from the bedroom.
 {¶ 45} Our review of the record thus indicates that these photographs were properly authenticated in accordance with Evid.R. 901. Furthermore, because these photographs, although taken several years after the alleged incidents, help the jury understand Shawn's testimony about his observations of several of the alleged incidents, we have also determined that these photographs constituted probative evidence. Testimony from a witness that the bathroom in the photographs looked different from how she remembered it to look does not render the photographs irrelevant evidence — the jury could choose to believe or disbelieve her testimony and give appropriate weight to this photographic evidence.
 {¶ 46} Accordingly, we cannot say that the trial court abused its discretion in admitting these photographs. This assignment of error is without merit.
 {¶ 47} We next address Grahek's fourth and fifth assignments of error jointly, where he challenges the court's denial of his Crim.R. 29 motion to acquit and the sufficiency of the state's evidence for his conviction.
 {¶ 48} Crim.R. 29(A) states, in relevant part:
 {¶ 49} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 50} In State v. Jenks,[18] the court set forth the following standard for our review of a sufficiency challenge:
 {¶ 51} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 52} R.C. 2907.02 defines the offense of rape. It provides, in relevant part:
 {¶ 53} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
 {¶ 54} "* * *
 {¶ 55} "(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.
 {¶ 56} "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 57} Here, Grahek's indictment stated he "engaged in sexual conduct with T. Grahek by purposely compelling her to submit by the use of force or threat of force and/or engaged in sexual conduct with T. Grahek, not his spouse, and the ability of T. Grahek to resist or consent was substantially impaired because of a mental or physical condition and Thomas Grahek knew or had reasonable cause to believe that T. Grahek's ability to resist or consent was substantially impaired because of a mental or physical condition."
 {¶ 58} Our review of the record indicates the state presented evidence to establish each element of the offense. T. testified that her father forced her to have vaginal, anal, and oral sex with him in the bathroom, in his bedroom, and on the living room couch on at least ten different occasions. She also stated she resisted or struggled with him to make him stop by moving around, yelling, and screaming. Her testimony was corroborated by two eyewitnesses, Steven and Shawn. Steven testified that he had seen his father on top of T. with his legs straddling over her. Shawn testified that because of the layout of the bathroom and the bedroom, he could see the inside of the bathroom through the bedroom window; and, on three occasions, he heard T. screaming and saw his father grabbing her arm and pulling her down in the bathroom while she struggled to get up.
 {¶ 59} Given this evidence, and viewing the evidence in a light most favorable to the prosecution, we conclude any rational trier of fact could have found the essential elements of rape proven beyond a reasonable doubt. Accordingly, Grahek's conviction is supported by sufficient evidence and the trial court properly denied his Crim.R. 29 motion. Grahek's fifth assigned error lacks merit.
 {¶ 60} We next consider his sixth assigned error, where he contends the jury's verdict is against the manifest weight of the evidence. When an appellant challenges a conviction on manifest-weight grounds, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, "and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[19] The discretionary power to grant a new trial should be exercised only in exceptional cases in which the evidence weighs heavily against the conviction.[20]
 {¶ 61} Furthermore, in a review of this claim, we are mindful that the weight of the evidence and the credibility of witnesses are primarily issues for the trier of fact,[21] because the jury is in the best position to observe the witnesses' demeanor, voice inflection, and mannerisms in determining each witness's credibility.[22] We also recognize that the jury is entitled to believe or not to believe all, part, or none of the testimony of the witnesses.[23]
 {¶ 62} Here, T. testified that her father engaged in various types of sexual conduct with her on at least nine separate occasions. Two eyewitnesses, Steven and Shawn, as well as a nurse who had examined her and a social worker, corroborated her testimony. The record also reveals that defense counsel vigorously cross-examined T., Steven, and Shawn in exploring various factors that may cast doubts on the veracity of their testimony.
 {¶ 63} Given that the credibility of witnesses is a matter left to the province of the jury, which is entitled to believe all, part, or none of the testimony, we have concluded the jury did not lose its way and create such a manifest miscarriage of justice when it found Grahek guilty of rape of T.. Accordingly, we overrule his sixth assigned error.
 {¶ 64} In his seventh assigned error, Grahek contends that his counsel's ineffective assistance warrants a reversal of his conviction.
 {¶ 65} In evaluating whether a defendant has been denied his Sixth Amendment right to effective assistance of counsel, the ultimate query is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done."[24]
 {¶ 66} In particular, to sustain his claim that his counsel had been ineffective, Grahek must demonstrate that trial counsel's performance fell below the objective standard of reasonable competence under the circumstances and that there exists a reasonable probability that, but for such deficiency, the outcome of the trial would have been different.[25] In this regard, a defendant has the burden of proof, because in Ohio a properly licensed attorney is presumed competent.[26]
Furthermore, strategic or tactical decisions made by defense counsel which are well within the range of professionally reasonable judgment need not be analyzed by a reviewing court.[27]
 {¶ 67} In this case, Grahek complains his counsel (1) failed to raise the issue of competency regarding T., Shawn, and Steven or to proffer expert opinion concerning the mental and cognitive capacity of T.; (2) failed to move the court for a continuance to summon the building's owner to testify the physical characteristics of the premises; (3) failed to object to Ms. Abbott's being qualified as an expert witness and failed to proffer expert testimony to rebut her opinion; and (4) failed to request a continuance to summon Carl Pudd, who Betty mentioned at her testimony as a family member who had spent time with T. He argues were his counsel to offer these witnesses at trial, there is a reasonable possibility that the outcome of trial would have been different.
 {¶ 68} We have resolved the competence issue regarding T., Shawn, and Steven. As to counsel's alleged failure to offer other witnesses to rebut testimony presented by the state, his contention that these witnesses would have exonerated him is speculation only. As such, Grahek fails to demonstrate prejudice from his counsel's performance. This assigned error lacks merit.
 {¶ 69} In his final assigned error, Grahek challenges the court's classification of him as a sexual predator, claiming the state failed to proffer evidence to show he was likely to commit future sexually oriented offenses. We disagree.
 {¶ 70} For a sexual predator classification, the state must prove by clear and convincing evidence that the offender has been convicted of a sexually oriented offense and that the offender is likely to engage in the future in one or more sexually oriented offenses.[28] Here, Grahek was convicted of rape, a sexually oriented offense pursuant to R.C.2950.01(D)(1). Thus, the sole issue for our review is whether the court's determination that Grahek is likely to commit sexually oriented offenses in the future is supported by clear and convincing evidence.
 {¶ 71} In State v. Eppinger, the Ohio Supreme Court set forth the following model for reviewing a trial court's sexual classification hearing. First, the court must create a "clear and accurate" record for an appellate review; second, the court must permit either side to present expert testimony which may aid the court in its determination; and third, the trial court "should consider the statutory factors listed in R.C. 2950.09(B)(3), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism."[29]
 {¶ 72} R.C. 2950.09(B)(3) enumerates the factors to be considered by the court: (a) the offender's age; (b) the offender's prior criminal record regarding all "offenses, including sex offenses; (c) the age of the victim; (d) whether the offense involved multiple victims; (e) whether the offender used drugs or alcohol to impair the victim or prevent the victim's resistance; (f) whether the offender completed any prior sentence and, if the prior offense was a sex offense, whether the offender participated in available programs for sexual offenders; (g) any mental illness or disability of the offender; (h) the nature of the offender's sexual activity with the victim and whether it was part of a demonstrated pattern of abuse; (i) whether the offender displayed or threatened cruelty; and (j) any additional behavioral characteristics that contribute to the offender's conduct.
 {¶ 73} When considering these factors, we note that they are merely guidelines that provide a framework to assist judges making a sexual predator determination and do not control a judge's discretion.[30] "Whether someone is a sexual predator is an inquiry that turns on its own facts. R.C. 2950.09(B)(3) does not require every factor be met before a trial court may find an offender to be a sexual predator; rather, it requires that the court consider those factors relevant to the instant case. Accordingly, the trial court is under no obligation to `tally up' the factors in any particular fashion and may designate an offender as a sexual predator even if only one or two statutory factors are present, so long as the totality of the relevant circumstances provides clear and convincing evidence that the offender is likely to commit a future sexually oriented offense."[31]
 {¶ 74} Here, the court conducted a hearing to determine whether Grahek should be designated as a sexual predator. Our review of the record indicates that the court created a "clear and accurate" record of the proceedings and did not deny either party presentation of expert testimony.
 {¶ 75} Thus, our inquiry is whether the trial court properly considered the relevant R.C. 2950.09(B)(3) factors.
 {¶ 76} The record reflects the state offered as evidence for the sexual classification hearing the testimony presented by the state at trial. The record also indicates that the court considered each factor enumerated in R.C. 2950.09(B)(3). Although some of the factors did not apply, the court commented at length on the nature of Grahek's sexual activity with the victim and whether it was part of a demonstrated pattern of abuse, whether the offender displayed or threatened cruelty, and additional behavioral characteristics that contribute to Grahek's conduct. It stated:
 {¶ 77} "This was a well-established pattern of behavior whereby the Defendant would wait until individuals left for the store, perhaps even dispatch them off to the store, and lock the house doors and hold this young woman prisoner, if you would, and had repeated vaginal, anal and oral sex with her.
 {¶ 78} "We had testimony as to three venues where this occurred: In the bathroom, in the living room on the couch, and in a bedroom in the house. Obviously, this type of behavior over such a long period of time beat down the victim's resistence, as well as the fact that she was in fear of what would happen if she was to tell of this behavior.
 {¶ 79} "In merging right to the next factor, whether the offender displayed or threatened cruelty; obviously engaging in anal sex with a very, very young woman is, in and itself, cruel, one could argue, as well as vaginal and oral sex.
 {¶ 80} "* * *[T]he defendant displayed cruelty because he knew of the victim's impaired mental state and understood not only would the victim not resist, even when she tried to fight him off, because she could not articulate her resistance, he would hold her down and engage in sexual activity against her will, and she seemed quite confused and upset as to why her father would breach her trust in that fashion.
 {¶ 81} "Again, it occurred again and again and again. It was repeated and relentless. Therefore, the Court finds that the Defendant/Offender displayed or threatened cruelty.
 {¶ 82} "Any additional behavior characteristics that contribute to the offender's conduct; I think it's worth noting that this obviously not only was the daughter of the defendant but this was a young woman who had a mental incapacity * * *or developmentally handicapped. I think that is an extreme situation and that has to be taken into consideration." (Tr. 1090-1092.)
 {¶ 83} Having reviewed the record, we conclude the court fully complied with the guidelines set forth in Eppinger and that its determination that Grahek is likely to commit future sex offenses is supported by clear and convincing evidence contained in the record. Accordingly, this assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, A.J., and DIANE KARPINSKI, J., concur.
[1] See Appendix.
[2] See, also, State v. Murphy, 91 Ohio St.3d 516, 2001-Ohio-112.
[3] Id.
[4] See State v. Long (1978), 53 Ohio St.2d 91, paragraph two of syllabus.
[5] Long, paragraph three of syllabus.
[6] State v. Hanselman (August 12, 1985), Brown App. No. CA84-11-016.
[7] See State v. Clark (1994), 71 Ohio St.3d 466, citing State v.Frazier (1991), 61 Ohio St.3d 247, 251; State v. Boston (1989),46 Ohio St.3d 108,115.
[8] (1989), 42 Ohio St.3d 136, certiorari denied (1990),497 U.S. 1011.
[9] Id., quoting Barnett v. State (1922), 104 Ohio St. 298, 301.
[10] Bradley, supra.
[11] (1945), 145 Ohio St. 379, paragraph three of the syllabus.
[12] (1994), 71 Ohio St.3d 473.
[13] Said, citing 2 Wigmore on Evidence (Chadbourn Rev. 1979) 712-713, Section 506.
[14] (1987), 35 Ohio App.3d 84.
[15] Id. at 86.
[16] Accord State v. Miller (1988), 44 Ohio App.3d 42. (it was not prejudicial error for counsel to fail to object to a twelve-year-old rape victim's testimony or request a voir dire on competency because the only indication of the child's mental incapacity was her mother's testimony that she was "mildly retarded." In addition, that court found it significant that the child answered in the affirmative when the court asked her if she was going to tell the truth and that from the record, she appeared able to recount the incident rather well.)
[17] See State v. Sage (1987), 31 Ohio St.3d 173, 180.
[18] (1991), 61 Ohio St.3d 259, paragraph two of sylabus.
[19] State v. Martin (1983), 20 Ohio App.3d 172,175, citing Tibbs v.Florida (1982), 457 U.S. 31, 38, 42. See, also, State v. Thomkins
(1997), 78 Ohio St.3d 380.
[20] Martin, citing Tibbs. See, also, Thomkins.
[21] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of syllabus.
[22] See State v. Saunders (Nov. 21, 2000), Franklin App. No. 99 AP-1486.
[23] State v. Antill (1964), 176 Ohio St. 61.
[24] State v. Hester (1976), 45 Ohio St.2d 71, paragraph four of syllabus.
[25] Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley
(1989), 42 Ohio St.3d 136.
[26] State v. Calhoun (1999), 86 Ohio St.3d 279 (citations omitted).
[27] Strickland, supra.
[28] R.C. 2950.01(E) and 2950.09(B)(3); State v. Eppinger,91 Ohio St.3d 158, 163, 2001-Ohio-247.
[29] See State v. Johnson, Cuyahoga App. 80736, 2002-Ohio-4031, at ¶ 9, citing Eppinger, supra at 166.
[30] State v. Brown, 151 Ohio App.3d 36, 2002-Ohio-5207, citingState v. Thompson (2001), 92 Ohio St.3d 584, 587.
[31] Brown, 151 Ohio App.3d at ¶ 50 (citations omitted).
 APPENDIX ASSIGNMENTS OF ERROR
"I. The trial court committed plain error when the trial court failed to inquire into the victim's competency to testify. At the time of trial the victim was borderline mentally retarded with an IQ of 67."
"II. The trial court erroneously admitted irrelevant evidence."
"III. The trial court erred when it failed to determine the competency of the state's witnesses Steven and Shawn, respectively."
"IV. The trial court erred when it denied Mr. Grahek's Crim.R. [29] Motion for acquittal."
"V. The jury's verdict was not supported by sufficient evidence."
"VI. The jury's verdict is against the manifest of the evidence."
"VII. The verdict should be reversed on the grounds that counsel provided ineffective assistance of counsel."
"VIII. The trial court erred in rendering a decision which was against the manifest weight of the evidence and/or in the alternative the trial court erred as a matter of law in determining that Mr. Grahek is sexual predator."