[Cite as *State v. Giles*, 2021-Ohio-2865.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No.  L-20-1076

        Appellee                                    Trial Court No.  CR0201901275

v.

Kveon Carnell Giles                              **DECISION AND JUDGMENT**

        Appellant                                   Decided:  August 20, 2021

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.      Introduction

{¶ 1} Appellant, Kveon Giles, appeals his conviction on charges of aggravated

murder, murder, and four counts of felonious assault, each with a three-year and a five-

year gun specification, with an aggregate prison sentence of life with the possibility of parole after 45 years. Finding no error, we affirm.

## II. Facts and Procedural Background

{¶ 2} On November 22, 2018, as Anthony Barnes drove away from a Thanksgiving celebration with his three children, a white vehicle drove up beside him on the freeway and Barnes heard some popping sounds. By the time that Barnes understood someone was firing at his car, the bullets had pierced the vehicle and shattered the windows along the driver's side, front and back. A round struck his three-year-old son, M.B. Gunfire missed Barnes and his other son, but his daughter, T.B., was cut by flying glass. When Barnes realized M.B. was gravely injured, he took the next exit and drove straight to St. Vincent's Hospital. Doctors removed a .40 caliber bullet from M.B.'s head. M.B. did not survive.

{¶ 3} Police responded to the hospital and interviewed Barnes. Barnes recalled seeing a white vehicle that resembled a PT Cruiser, and he also identified the location of the shooting, along the freeway just after he entered at Miami Street. Barnes told police he had attended a Thanksgiving celebration just before the shooting at the America's Best hotel, located in Northwood, Ohio. Police viewed surveillance video from the hotel, as well as ODOT video from the route between the hotel and the freeway, and identified the suspect vehicle as a white Chevrolet HHR.

2.

{¶ 4} Video from the hotel showed a white HHR parked near Barnes' car, and at least two of the occupants entered the hotel lobby.[1]  From that video, police identified two of appellant's codefendants, Andre White and Matthew Smith.  After White and Smith returned to the car, the HHR circled the hotel before driving to a spot just off the property, where it parked in a neighbor's driveway with the headlights off, in view of Barnes' car.  When Barnes drove off, the HHR followed.  Various surveillance videos showed the HHR trailing Barnes' car to the freeway, and ODOT cameras captured video of the HHR speeding up to drive next to Barnes' car before driving off.

{¶ 5} In the hours after the shooting, police issued an alert to officers for the HHR.  Within a short time, an officer spotted an HHR at a gas station near the hospital, and took down the vehicle's tag number.  The HHR was registered to Matthew Smith's mother, and surveillance video at the gas station showed White as the driver.  Police matched the vehicle with the individuals appearing in surveillance video, and stopped the vehicle soon after.  Smith's mother was driving at the time.  Police secured the HHR as evidence.

{¶ 6} Police processed the HHR and lifted numerous fingerprints from the outside and inside of the vehicle.  Prints taken from the exterior of the HHR, from both rear doors, and also from the interior, rear, passenger-side door, matched known prints of

---

[1] A third person entered at the same time and moved toward a vending machine. Testimony indicated this individual, Daevyon Maddox, was part of the group riding in the HHR who actively participated in the shooting.  By the time of trial, Maddox had died, as referenced in the testimony that Maddox "is no longer with us."

3.

appellant. The inside of the HHR also had damage consistent with a bullet fired from inside the vehicle. Police collected an unfired cartridge under the front passenger seat, and a shell casing from the rear passenger-side.

{¶ 7} Police also secured and examined Barnes' car. The vehicle sustained damage only to the driver's side, including shattered windows and bullet holes. Police recovered a piece of jacketing from a .40 caliber bullet at the foot of the driver's seat, and noted blood on the console near the front passenger seat. They also found a bullet fragment behind the driver's seat, and a bullet inside the interior of the rear, driver's-side car seat. Additionally, there was blood and "biological material" on the rear, driver's-side seat and bullet "defects" in the frame of the car.

{¶ 8} From the hospital, police collected the bullet removed from M.B.'s head. It was consistent with a .40 caliber bullet. Within hours of the shooting, police also closed the north-bound lanes of the expressway, near Collingwood, and recovered four, nine-millimeter shell casings and one bullet fragment. Subsequent testing of the shell casings indicated the same gun fired all four, nine-millimeter rounds.

{¶ 9} Two days after the shooting, White was arrested in Detroit for a separate homicide. He entered a plea and received a sentence of 24 to 50 years for second-degree murder, with an additional two years for a firearms charge. Police traveled to Detroit to interview White, and White eventually cooperated with the Ohio investigation,

4.

identifying appellant as one of the shooters involved in this incident. White's description of events matched the surveillance video and the fingerprint evidence.

{¶ 10} Police obtained a warrant for the cell phone records of Smith and appellant, and tracking information placed Smith and appellant near each other, moving together from the area of the America's Best hotel to the area of the shooting, contemporaneously with the shooting. Police also obtained White's cell phone records, but despite White's claim that he was on his phone during the shooting, the records did not indicate White's phone "pinged" any cell towers during that time period.

{¶ 11} According to White, the group ended up at the Quality Inn on Secor Road where they were finally able to get a room with the help of Smith's mother. The group then left, and stopped at Smith's brother's house, the gas station, a hall for a performance and party, and a restaurant, before returning to the Quality Inn around 2:00 a.m. Appellant appeared for the first time on surveillance video at the Quality Inn as they finished the night, hours after the shooting.

{¶ 12} On February 14, 2019, the state filed an indictment charging appellant and his codefendants, White and Smith, each with one count of aggravated murder in violation of R.C. 2903.01(A) and (F) in Count One, one count of murder in violation of R.C. 2903.02(B) and 2929.02 in Count Two, and four counts of felonious assault in violation of R.C. 2903.11(A)(2) and (D) in Counts Three through Six. All counts were accompanied by a firearm specification pursuant to R.C. 2941.145(A), (B), (C), and (F),

5.

and a specification for discharging a firearm from a motor vehicle pursuant to R.C. 2941.146(A), (B), and (D). Appellant was taken into custody on March 5, 2019, and arraigned on March 13, 2019, with appointed counsel. He entered pleas of not guilty to all charges. Appellant and White remained in local custody, leading up to trial, but the two were held in different sections of the jail. Smith also remained in custody, but he was held in the juvenile detention center prior to trial.

{¶ 13} On February 5, 2020, pursuant to a plea agreement, White entered a guilty plea to complicity to involuntary manslaughter as a lesser offense to Count Two, murder, with the attached specification for discharging a firearm from a motor vehicle, and complicity to Count Three, felonious assault, with the attached specification for discharging a firearm from a motor vehicle. The state dismissed Counts One, Four, Five, and Six, charging aggravated murder and three counts charging felonious assault, including all attached specifications. The trial court accepted the plea, and scheduled White's sentencing hearing for a date after appellant's and Smith's joint trial.

{¶ 14} Appellant's trial counsel filed several pretrial motions challenging the state's evidence. Pertinent to this appeal, appellant challenged admission of a note received by White in jail and attributed to appellant, evidence of cell phone tracking data, and surveillance video of the HHR for times preceding appellant's appearance as an occupant of the vehicle.

6.

{¶ 15} As to the note, appellant argued that there was no basis for authentication, as White met appellant on Thanksgiving night and had no further interaction with him after that one-time association. Appellant further argued White had no knowledge of his handwriting, as the two had never exchanged notes or letters, and therefore, White had no basis to attribute the writing to appellant. Furthermore, he argued that the state had no "chain of custody" to demonstrate appellant's purported authorship, as a third person delivered the note to White and did not testify regarding the note's origin. The trial court considered the contents of the note, and determined the note was properly authenticated pursuant to Evid.R. 901(B)(1) and (4), based on White's belief of authorship and the note's distinctive contents, and denied the motion.

{¶ 16} Appellant also challenged the basis for the search warrant, seeking to preclude admission of cell-site location information (CSLI). Specifically, appellant challenged the affidavit proffered in support, arguing the phone number attributed to appellant was based only on information given by an unknown informant. The trial court denied the motion, determining the affidavit contained sufficient evidence to support probable cause and in the alternative, found the good-faith exception applied.

{¶ 17} Finally, appellant challenged admission of surveillance video of the HHR, recorded during the hours preceding his appearance on the video. Appellant argued such evidence was irrelevant without proof that he was in the car at the time the video was

7.

recorded. Appellant relied on the lack of any disclosed witnesses, placing him in the car at the time of the shooting. The trial court denied the motion.

{¶ 18} At appellant's and Smith's joint trial, appellant renewed his objections to admission of the note and CSLI testimony, and also challenged the state's request to certify its CSLI witness as an expert regarding the cell-tracking data. Appellant also renewed his objection to the surveillance video. The trial court overruled the objections and permitted the evidence and expert testimony.

{¶ 19} The disputed issue at trial centered on the identity of the assailants, with appellant disputing his presence in the white HHR until hours after the shooting, consistent with his late appearance on surveillance video. However, the state presented evidence demonstrating appellant's participation and presence in the HHR, including fingerprints, CSLI data, and testimony. The trial court admitted expert testimony by FBI Special Agent Jacob Kunkle, over appellant's objection that such testimony was merely lay testimony, waiving any challenge to Agent Kunkle's qualifications, and Agent Kunkle's testimony placed appellant and Smith together, near the scene at the time of the shooting. White also testified that appellant, Smith, and Daevyon Maddox all fired into Barnes' car after discussing their joint plan to kill someone inside that car.

{¶ 20} After a five-day trial, the jury returned guilty verdicts on all counts, and made the additional, affirmative finding as to all attached specifications. On March 23, 2020, the trial court sentenced appellant, and determined Counts Two and Three merged

8.

with Count One, aggravated murder. The state elected to proceed to sentencing on Count One. The trial court sentenced appellant to a term of life with parole eligibility after 25 years for Count One, with an additional, mandatory and consecutive term of three years for the firearm specification pursuant to R.C. 2929.145, and an additional, mandatory and consecutive term of five years for the firearm specification pursuant to R.C. 2929.146.

{¶ 21} As to Count Four, the trial court imposed a three year prison term and additional terms for the specifications under R.C. 2941.145 and 2941.146. The trial court ordered the three-year term under R.C. 2941.145 to be served consecutively, and the five-year term under R.C. 2941.146 to be served concurrently to the five-year specification attached to Count One. As to Counts Five and Six, the trial court imposed a three-year prison term for each count and additional terms of three and five years for the two firearm specifications, pursuant to R.C. 2929.145 and 2929.146, to be served concurrently with the specifications imposed in Count One. The trial court ordered the sentences as to each Count to be served consecutively. Thus, appellant's total prison term equaled life without eligibility for parole until he served 45 years.

{¶ 22} Appellant filed a timely appeal of this judgment.

### III.    Assignments of Error

{¶ 23} In challenging the trial court's judgment, appellant asserts the following as error:

9.

I.  The Trial Court erred in allowing the introduction of prejudicial evidence by the State without establishment of a proper foundation.

II.  The Trial Court erred in permitting hearsay statements to identify Appellant as the author of the letter, and this admission violated Appellant's right of confrontation.

III.  Appellant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

IV.  The Trial Court erred in qualifying the State's witness as an expert and admitting his testimony as such, as his conclusions were unreliable and his analysis did not require any specialized skills.  The Trial Court also erred in allowing cell phone site testimony as no evidence was presented showing Appellant had a cell phone on him.

V.  The Trial Court erred in denying Appellant's motion to suppress the pings of Appellant's purported cell phone as the search warrant was based upon a constitutionally defective affidavit.

VI.  It was an abuse of discretion to allow the State to use surveillance video of the HHR at trial against Appellant as depictions in the surveillance video prior to the killing were not relevant as the State failed to place Appellant in the HHR at or prior to 9:00 p.m.

10.

VII. The evidence presented at trial was insufficient to support any of the convictions.

VIII. The Jury's finding of guilty on all indicted counts was against the manifest weight of the evidence.

IX. Appellant's sentence does not achieve the purposes and principles of sentencing.

## IV.    Analysis

{¶ 24} Appellant's first six assignments of error raise evidentiary challenges relative to the admissibility of the note, the CSLI data and testimony, and surveillance video, with related argument regarding ineffective assistance of trial counsel. His remaining three assignments of error challenge the sufficiency and weight of the evidence, as well as the trial court's sentencing determination. We begin with consideration of appellant's evidentiary challenges, addressing the related ineffective assistance of counsel argument as to specific evidence.

### A. Admissibility of the Note

{¶ 25} Appellant's first three assignments of error pertain to admission of the note, received by White while in custody and published to the jury during White's testimony. Appellant argues the note was not properly authenticated, and the trial court erred in permitting hearsay regarding the note's author, arguing ineffective assistance of counsel for failing to object to these hearsay statements. We address each issue in turn.

11.

**{¶ 26}** In his first assignment of error, appellant argues the state failed to properly authenticate the note prior to admission. At trial, appellant's counsel argued that a "complete chain of custody" was required for admissibility, and characterized the content of the note as "generic." In his appeal, appellant reiterates this argument, arguing White could not authenticate the note because he lacked knowledge of appellant's handwriting, and the note otherwise lacked "enough detail to make it clear to the jury that the author of the letter was in the HHR at the time of the killing." Therefore, appellant argues, the trial court erred in admitting the note as evidence.

**{¶ 27}** "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage,* 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). To reverse, we must determine the trial court abused its discretion in admitting the note. (Citation omitted) *State v. Jaros,* 6th Dist. Lucas No. L-10-1011, 2011-Ohio-5037, ¶ 20. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 28}** Should we find the trial court erred in admitting the evidence, in violation of a constitutional right, we must still find that such error resulted in prejudice. *Sage* at 181. "Where evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless 'beyond a reasonable doubt' if the remaining evidence alone comprises 'overwhelming' proof of defendant's guilt."

12.

*Sage* at 181, quoting *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

{¶ 29} The trial court determined the note was properly authenticated, as a foundation for admission.  Authentication is governed by Evid.R. 901, which provides in pertinent part:

(A) General Provision.  The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(B) Illustrations.  By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) Testimony of Witness With Knowledge.  Testimony that a matter is what it is claimed to be.

* * *

(4) Distinctive Characteristics and the Like.  Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

{¶ 30} The burden for authentication lies first with the proponent, requiring a prima facie showing that the evidence is what its proponent claims.  *State v. Gibson*, 6th

13.

Dist. Lucas Nos. L-13-1223, L-13-1222, 2015-Ohio-1679, ¶ 45, citing *Hartford Insurance Co. v. Parker,* 6th Dist. Lucas No. L-82-181, 1982 WL 6662, *7 (Dec. 3, 1982) (additional citation omitted.); *see also State v. Schulman,* 2020-Ohio-4146, 157 N.E.3d 848, ¶ 29 (10th Dist.).  Once the proponent satisfies this initial burden, the burden shifts to the opponent to rebut the prima facie showing with evidence challenging the genuineness of the document in question.  *Gibson* at ¶ 45, citing *Hartford Insurance Co.* at *7.

{¶ 31} We have previously recognized that the "sufficient to support a finding" requirement is not a rigorous standard.  *State v. Jones,* 6th Dist. Lucas No. L-05-1232, 2007-Ohio-563, ¶ 54.  Instead, the standard's "low threshold reflects an orientation of the rules toward favoring the admission of evidence."  *Id.*  Furthermore, "[t]his threshold standard does not require conclusive proof of authenticity."  *Jaros* at ¶ 15.

{¶ 32} The note in question was folded, with the outside addressed to a fellow inmate in White's area, Kenneth Allison, identifying the writer as "yo cousin fredo."  White testified that appellant's street name is "Fredo."  The inside of the note contained two paragraphs.  The first paragraph was addressed to "free," which White initially claimed was short for Allison's street name, "Freeway."   The next paragraph addressed "Dre," which White identified as his street name.  The text of the letter was as follows:

14.

Was goin on free dey jus brung my codifident dwn here from Detroit he in 6NA overdere dnt give him dis letter jus let him read it an den rip it up…

Dre dis fredo on bloods dnt take the stand dnt even cooroperate wit dem tell dem take you back to da D on Kent yo statement gone stroke all three of us dey dnt got no evidence on nun of us bro they pumpfake we fighting are shit an yo STATEMENT the only thing gone fuck it up even doe you lied they dnt GAF they gone fuck you over to bro so STAYSOLID only way this shit gone go Good if everybody keep it Gangster yo weak ass statement dnt mean nun if you aint gone take the stand at trial on bloods so dnt let them white people lie to you or trick you dey tryna turn mfs against each other Tell em you dnt wanna cooroperate take you back to Detroit Write me back and have bro give it to da C-O Keep it 100 at all times.

{¶ 33} Prior to White's testimony before the jury, the trial court held a brief hearing on appellant's motion in limine regarding the note. Appellant's trial counsel challenged White's knowledge regarding the note, based on delivery by a third party, White's limited acquaintance with appellant, and the fact that the details contained within the writing could have been known by others in the jail. This challenge went beyond the threshold standard for authentication, seeking conclusive proof rather than "evidence

15.

sufficient to support a finding that the material in question is what its proponent claims."

Evid.R. 901(A).

{¶ 34} In a similar case, the Fifth District Court of Appeals found no abuse of discretion where an unsigned note, discovered on the floor of a jail, was deemed properly authenticated and admitted as evidence against the purported author. In *State v. Williams,* 5th Dist. Stark No. 2021-Ohio-443, a corrections officer discovered a letter, attributed to Williams and written to his friend, Mitch Greenlief, in the jail hallway where Greenlief was assigned to sweep floors. *Williams* at ¶ 54. The letter was unsigned and written in pencil, and discussed events relevant to Williams' murder trial, included details of his ongoing trial, and outlined his potential self-defense argument. *Id.* at ¶ 47. The author of the letter attempted to influence Greenlief's recollection of events the day of the murder, relative to issues on trial in the criminal case. *Id.*

{¶ 35} Williams failed to object to authentication at trial, and the court reviewed for plain error only. *Id.* at ¶ 51. Even so, the court in *Williams* found no error in authenticating the unsigned letter, discovered on the floor of a jail hallway where Greenlief had been assigned to work. *Id.* at ¶ 54. The court noted the details in the letter referencing the trial and specific witnesses by name, as well as the author's proposed self-defense argument. *Id.* The court further considered the purpose of authentication as a condition for admissibility, requiring "*some indication* the evidence is relevant and reliable," noting the weight of the evidence as separate determination, reserved for the

16.

trier of fact. (Emphasis added.) *Id.* at ¶ 53, citing *State v. Brown,* 151 Ohio App.3d 36, 2002-Ohio-5207, 783 N.E.2d 539, ¶ 35 (7th Dist.).

{¶ 36} Applying the authenticity standard to the facts in this case, there are more indicators of authorship here than were present in the facts recited in *Williams.* In *Williams,* the note was unsigned and found on the floor of the jail hallway by a corrections officer. *Williams* at ¶ 54. Here, the author identifies himself as "Fredo," appellant's street name. The recipient in *Williams* was identified based on the place the note was found, in an area where Greenlief was sweeping the floor at an earlier time. *Id.* Here, White testified that Allison handed him the note, and both White and Allison are addressed in the note, White by his street name. Finally, in *Williams,* the author referenced details of his trial, including his self-defense argument, and attempted to influence Greenlief's statements regarding the crime. *Id.* at ¶ 47. Here, the author urges White not to testify because his testimony would "stroke all three of us," but instead, ask to be sent back to Detroit. White, one of three individuals charged in the shooting, testified he was from Detroit and had been sentenced in another case there. White further testified that he had given a statement to police and agreed to testify in his codefendants' trial.

{¶ 37} Appellant argues that the details within the note, as well as the testimony indicating Allison delivered it, fall short as proof that he wrote the note. However, authenticity does not require proof, as it is a less rigorous standard that favors the

17.

admission of evidence. *Jaros* at ¶ 15; *Jones* at ¶ 54. Considering the contents of the note and White's testimony as to those contents, matching details of appellant's case, we find no abuse of discretion by the trial court in determining the state satisfied its burden through a prima facie showing that the note was what they claimed. The burden then shifted to appellant to rebut that prima facie showing with evidence of his own. *Gibson,* 2015-Ohio-1679 at ¶ 45; *Schulman,* 2020-Ohio-4146 at ¶ 29. Appellant did not do so, and therefore, the trial court did not err in admitting the note.

{¶ 38} In the alternative, appellant argues that the note was irrelevant and unduly prejudicial, regardless of authentication. In support, he argues the lack of evidence placing him inside the HHR prior to his appearance on surveillance video, hours after the shooting. He also raises an argument not asserted in the trial court, that the use of the phrase "on bloods" was inflammatory and required exclusion of the note as evidence.

{¶ 39} As to relevance, Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." With his "irrelevant" argument, appellant acknowledges just how this evidence *was* relevant to the prosecution's case, specifically on the issue of appellant's participation in the shooting and his consciousness of guilt. Appellant refutes relevance, however, by reiterating his authentication argument, asserting the note was introduced to

18.

link him to the shooting without "any details that only someone in the HHR at the time of the killing would have known."

{¶ 40} Authentication is essentially a form of conditioned relevancy, tying the evidence to issues or persons. *See Toledo v. Green,* 2015-Ohio-1864, 33 N.E.3d 581, ¶ 35 (6th Dist.); *see also* 1980 Staff Note to Evid.R. 901. Furthermore, once the trial court determines there is an indication of relevance and reliability, any challenge to authorship is a separate matter for the jury to resolve in deciding the weight to be given the evidence. Staff Note to Evid. R. 901; *see Brown,* 151 Ohio App.3d 36, 2002-Ohio-5207, 783 N.E.2d 539, at ¶ 35. Here, we find no error in the trial court's authentication and admission of the note. Appellant's relevance argument, stated differently, still fails.

{¶ 41} Appellant's argument of undue prejudice also lacks merit. Appellant argues that the mention of "on bloods" and reference to keeping things "gangster," required either exclusion of the note or a cautionary instruction regarding the reference to gangs. He also contends that the state introduced the note solely to bolster White's testimony by showing he testified despite "a violent gangster encouraging White not to cooperate so that the killing of a toddler would go unpunished." Because appellant did not raise this argument in the trial court, we review for plain error only. Appellant, therefore, must demonstrate a clear error by the trial court, and he must also show that the error affected the fairness or integrity of the proceedings, so as to create a manifest

19.

miscarriage of justice requiring reversal of the conviction. *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), citing Crim.R. 52(B)

{¶ 42} Fairness is a subjective concept, but Evid.R. 403(A) only requires exclusion of relevant evidence that is *unfairly* prejudicial. "If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403." *State v. Crotts,* 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 24. Therefore, we focus on whether the evidence created *unfair* prejudice, which has been defined as that evidence that arouses a jury's emotions or appeals to an instinct to punish, resulting in a conviction decided on an improper basis. *Crotts* at ¶ 24, citing *Oberlin v. Akron Gen. Med. Ctr.,* 91 Ohio St.3d 169, 172, 743 N.E.2d 890 (2001).

{¶ 43} In this case, appellant challenges admission of the note based on inclusion of the phrases "keep it gangster" and "on bloods," language never emphasized during testimony. While a jury may have understood the phrase "keep it gangster" to mean "stay solid," based on context, the phrase "on bloods," is not so easily understood based on its use within the note. Neither the state nor the defense attempted to explain this phrase during trial, and no attention was drawn to the language.

{¶ 44} Therefore, while appellant argues the phrases were unduly prejudicial, he never articulates *why* this was so, considering other, unchallenged testimony regarding an "op" against someone with whom the defendants had a "beef." Instead, appellant states his argument in conclusory fashion, without authority or analysis, and seeks reversal

20.

without reasoning. Without reasoning, appellant fails to demonstrate any error, let alone plain error, based on the use of the phrases "keep it gangster" and "on bloods." Accordingly, having also determined the trial court did not err in authenticating the note, we find no demonstration of unfair prejudice, and appellant's first assignment of error is not well-taken.

{¶ 45} In his second and third assignments of error, appellant challenges the admission of hearsay, consisting of White's testimony that Allison told him appellant wrote the note, arguing his trial counsel was ineffective in failing to object to the statement of Allison, proffered by White, and these statements violated his Confrontation Clause rights of the Sixth Amendment to the United States Constitution. While trial counsel asserted a general objection to admission of the note based on authentication argument, there was no specific objection raised to the statement, conveyed twice by White in his testimony, indicating Allison told White the note was from appellant.

{¶ 46} Evid.R. 801(A) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Testimonial hearsay, for Confrontation Clause purposes, involves statements elicited for the purpose of proving "past events potentially relevant to later criminal prosecution." *State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 23, quoting *Davis v. Washington,* 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Statements are considered with a focus on the declarant's expectation, and a

21.

statement will be deemed testimonial only if it is made under circumstances that would "lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Stahl* at paragraph one of the syllabus, citing *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

{¶ 47} The test for determining whether trial counsel provided ineffective assistance is set forth in *Strickland v. Washington,* 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See State v. Bradley,* 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). With a presumption that counsel's conduct was appropriate, we will only find ineffective assistance of counsel if appellant demonstrates "that counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bradley* at 379-380, citing *Strickland* at 687-688.

{¶ 48} Here, appellant asserts error based on the hearsay statements of Allison, proffered by White, arguing his counsel was ineffective by failing to object to these statements at trial. The statements occurred during White's testimony on direct examination, as follows:

Q:     So you were in your housing area, and you had contact with Kenneth Allison?

A:     Correct.

22.

Q:   And who is he to you?

A:   Nobody.

Q:   What did he do?

A:   He approached me and said, here.  Fredo gave me this to give to you.

   * * *

Q:   Who did you think it was from after you read it?

A:   [Appellant].

Q:   And what do you call him?

A:   Fredo.

Q:   [Appellant]?

A:   Yes.

Q:   Have you ever gotten a note from him before?

A:   No.

Q:   Have you ever seen his handwriting?

A:   No.

Q:   So how did you know it was from him?

A:   Because that's what Kenneth Allison told me.

{¶ 49} White then read the note to the jury, over the objection of appellant's trial counsel, and the prosecution asked follow up questions.

23.

Q: That's the note you got from Kenneth Allison?

A: Correct.

Q: Why did you think it was from Fredo?

A: Um, because the way he wrote the letter and from him starting off saying Dre, this Fredo. So I automatically assumed it was from Fredo.

Q: And what's he talking about?

A: Me testifying.

{¶ 50} Appellant challenges the out of court statements of Allison with his assignments of error, but his accompanying argument mainly challenges the trial court's admission of the note. Appellant first argues that the two statements by Allison, as related by White, provided the sole evidence of authorship, because the note was not signed. This argument ignores other evidence, such as the text of the note and White's testimony indicating that "Fredo" was appellant's street name. Therefore, appellant's claim regarding hearsay as the sole evidence of authorship lacks merit.

{¶ 51} Next, appellant argues that admission of the hearsay statements resulted in plain error. However, his argument in support challenges White's testimony, and not the statements, arguing "White is the only evidence offered that put [a]ppellant in the HHR, and * * * White's credibility is central to this case." Appellant also argues that Allison's statements provided the only proof of authorship of the note, with authorship the sole,

24.

relevant issue in demonstrating appellant's culpability. This argument, however, fails to address other evidence that linked appellant to the note, such as the contents that identified the author as "Fredo." Appellant's argument, furthermore, ignores evidence, independent of White, that demonstrated appellant was present at the scene of the shooting, including fingerprint and cell phone evidence.

{¶ 52} Third, appellant argues that the admission of Allison's statements violated his right to confront witnesses against him. In support, appellant argues that the police questioning of White, regarding the shooting, rendered Allison's statements regarding the note testimonial hearsay. This reasoning lacks logic, and appellant seems to misunderstand the concept of "testimonial hearsay" by conflating Whites' statements to police with Allison's out-of-court statements to White, assigning the investigatory purpose of the police in questioning White to Allison's communication to White regarding the origin of the note passed through the jail.

{¶ 53} Nevertheless, appellant argues Allison's statement was made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834 at paragraph one of the syllabus, citing *Crawford,* 541 U.S.36, 61, 124 S.Ct. 1354, 158 L.Ed.2d 177. Appellant applies this standard to White's testimony, however, and not the circumstances in which Allison made *his* statement. If we consider the circumstances in which Allison made his statement, the out-of-court

25.

statement actually challenged by appellant in his assignment of error, it appears the primary purpose for Allison's statement was to inform White who sent the note. The note, moreover, conveyed this same information, with the outside addressed to Allison, and a paragraph inside requesting the note be shown to White, "Fredo's" codefendant. White testified that Allison passed the note to him, and the second part was addressed to White (aka "Dre"). Considering the circumstances, therefore, we find the statements of Allison were not testimonial and did not implicate the Confrontation Clause.

{¶ 54} Finally, appellant contends that his trial counsel was ineffective in failing to object to the out-of-court statement of Allison, proffered twice by White at trial. Again, appellant actually challenges admission of the note, arguing the prosecution used the note to "bolster the State's theory that [a]ppellant was in the HHR and killed [M.B.]" and that the letter was only introduced "to place in the minds of each juror that an innocent man would not write that letter asking a witness not to testify."

{¶ 55} Contrary to appellant's assertion, Allison's statements did not provide the sole basis for admission of the note. Furthermore, appellant's trial counsel *did* object to admission of the note by challenging authentication, and specifically argued lack of proof to support authorship of the note. Counsel's failure to object to Allison's out-of-court statement, moreover, may be attributed to trial strategy to avoid placing emphasis on the statement. Appellant's trial counsel, instead, opted to address the statement on cross-

26.

examination, resulting in White admitting that he did not really know who gave the note to Allison or that "free" stood for Allison's street name, "Freeway."

{¶ 56} Appellant challenges the admission of Allison's hearsay statement to White, proffered twice in White's testimony, as plain error and a violation of his right to confront witnesses. He further argues his trial counsel was ineffective in failing to object to this hearsay. The sum of appellant's argument, however, mainly challenges the admission of the note, with Allison's statements characterized as the sole basis for admission. Appellant's argument lacks support in the record, and in some instances, contradicts the record. Based on appellant's argument, which focuses on admission of the note and not Allison's statements, we find no plain error in the admission of these statements, and no ineffective assistance of counsel as asserted in the assignment of error. Appellant's second and third assignments of error, accordingly, are not well-taken.

**B. Admissibility of Cell Site Location Information**

{¶ 57} Appellant's fourth and fifth assignments of error challenge the evidence of appellant's cellphone location and activity. Because his fifth assignment of error challenges the warrant to access the CSLI records, we address these errors out of order.

{¶ 58} In his fifth assignment of error, appellant argues the trial court erred in denying his motion to suppress the cell phone records, used at trial to present CSLI evidence, placing appellant near the scene of the shooting. In support, he challenges the

27.

sufficiency of the affidavit in support of the warrant, and argues there was no basis for a good faith exception.

{¶ 59} We review the issuing judge's probable-cause determination with deference to that judge's finding, resolving "doubtful or marginal cases" "in favor of upholding the warrant." *State v. George,* 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus. Our review is not de novo, as we may not substitute our judgment for that of the issuing judge, with review limited to ensuring there was "a substantial basis for concluding that probable cause existed." *Id.; Illinois v. Gates,* 462 U.S.213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Furthermore, as the review is a mixed question of law and fact, it is necessarily "a case-by-case fact-driven analysis." (Citation omitted.) *State v. Castagnola,* 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 32.

{¶ 60} The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," requiring a warrant based on probable cause "describing the place to be searched, and the persons or things to be seized." Article I, Section 14 of the Ohio Constitution provides the same protections. *See State v. Banks-Harvey,* 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 16, citing *State v. Jones,* 143 Ohio St.3d 266, 2015-Ohio-483, 387 N.E.3d 123, ¶ 12.

28.

{¶ 61} The CSLI sought by police, in this case, was neither a person nor a place, but instead, data collected and stored by a third-party cell phone service provider. Police use this type of historical data, retained by the provider, to track past locations of a particular cell phone. Until recent years, police often obtained CSLI with a subpoena to the provider. *See, e.g. State v. Jones,* 2019-Ohio-2134, 137 N.E.3d 661, ¶ 46 (10th Dist.) ("At the time, CSLI was attainable pursuant to a court order.").

{¶ 62} In 2018, however, the United States Supreme Court recognized a narrow privacy interest in historical CSLI, and held "the Government must generally obtain a warrant supported by probable cause before acquiring such records." *Carpenter v. United States,* --- U.S. ---, 138 S.Ct. 2206, 2221, 201 L.Ed.2d 507 (2018). The court based this newly recognized privacy interest on the reality of society's reliance on cell phones, permitting use of the stored data in obtaining an "intimate window into a person's life, revealing not only his particular movements, but through them, his 'familial, political, professional, religious, and sexual associations.'" *Carpenter* at 2217, quoting *United States v. Jones,* 565 U.S. 400, 415, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). The court found that stored, historical cell-site data presented "even greater privacy concerns than the GPS monitoring of a vehicle," as considered in *Jones.* "While individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and

29.

into private residences, doctor's offices, political headquarters, and other potentially revealing locales." (Citations omitted.) *Carpenter* at 2218.

{¶ 63} Based on the amount and type of data collected in *Carpenter,* the United States Supreme Court distinguished CSLI from other types of surveillance, finding:

[T]he retrospective quality of the data here gives police access to a category of information otherwise unknowable. In the past, attempts to reconstruct a person's movements were limited by a dearth of records and the frailties of recollection. With access to CSLI, the Government can now travel back in time to retrace a person's whereabouts, subject only to the retention polices of the wireless carriers, which currently maintain records for up to five years. Critically, because location information is continually logged for all of the 400 million devices in the United States—not just those belonging to persons who might happen to come under investigation—this newfound tracking capacity runs against everyone. Unlike with the GPS device in *Jones*, police need not even know in advance whether they want to follow a particular individual, or when.

Whoever the suspect turns out to be, he has effectively been tailed every moment of every day for five years, and the police may—in the Government's view—call upon the results of that surveillance without

30.

regard to the constraints of the Fourth Amendment. Only the few without

cell phones could escape this tireless and absolute surveillance.

*Carpenter* at 2218.

{¶ 64} Appellant's main argument in support of suppression turns on the confidential informant's statement regarding his "supposed cell phone number," as the affidavit lacked an accompanying attestation or corroboration of the informant's reliability. Appellant contends that without such an indicator of reliability, the probable cause determination lacked the necessary link between evidence of the shooting and the phone to be searched, suggesting the search targeted the contents of the phone rather than the location data actually sought. The authority he cites in support, moreover, pertains to the reliability of an informant's information regarding the *criminal activity*, and not reliability of information pertaining to a person's phone number. *See State v. Dominique*, 6th Dist. Lucas No. L-00-1125, 2001 WL 60615 (Jan.26, 2001) (informant provided information of drug deliveries); *State v. Nunez,* 180 Ohio App.3d 189, 2008-Ohio-6806, 904 N.E.2d 924 (6th Dist.) (Informant provided information regarding trafficking); *State v. Kiser,* 6th Dist. Sandusky No. S-14-024, 2015-Ohio-3076 (informant observed drug activity).

{¶ 65} The challenged affidavit included facts regarding the criminal activity as well as appellant's link to that activity, including an eyewitness and fingerprint evidence that placed appellant on scene. The search, moreover, pertained to records in possession

31.

of a third-party, and not appellant's home or the contents of the cell phone. The affidavit first indicated that records were obtained, based on a number supplied by appellant's probation officer, but the records did not belong to appellant. Police then received information from an unnamed informant, who supplied a number nearly identical to the first number, just one number off.[2] This information, appellant argues, fell short of probable cause, because he believes the law required police to seek additional corroboration of the cell phone number, while also neither admitting nor denying the number in question belonged to him.

{¶ 66} The probable cause inquiry does not demand certainty, but instead requires sufficient facts "to conclude that there is a fair probability that evidence of a crime will be found in a particular place." *Castignola,* 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, at ¶ 35, citing *George,* 45 Ohio St.3d at 329, 544 N.E.2d 640, citing *Gates,* 462 U.S. at 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (additional citation omitted.). In reviewing this conclusion, we must ensure the issuing judge had a "substantial basis for concluding that probable cause existed." *Castagnola* at ¶ 35, citing *George* at 329, citing *Gates* at 238–239 (additional citation omitted.).

---

[2] The exhibit included in the record has *all* numbers redacted. As appellee cites to an unredacted affidavit, referencing the two phone numbers, and appellant does not dispute the numbers cited by appellee, we presume the numbers are as represented by appellee.

32.

{¶ 67} Upon review of the affidavit, we find a substantial basis for concluding the cell phone data had a fair probability of providing evidence of a crime, considering the totality of the circumstances presented within the affidavit, and the requirement the issuing judge make a "practical, common-sense decision[.]" *George* at 329, citing *Gates* at 238-239. Appellant's argument, moreover, does not challenge the facts contained within the affidavit, with the exception of the informant's reliability. The affidavit recites facts demonstrating evidence of a crime had a fair probability of being found in tracking data belonging to a particular cell phone number. However, appellant relies on a lack of certainty about the cell phone number (which may or may not belong to him), arguing that this uncertainty rendered the affidavit defective. This argument excludes other facts that supported the common-sense decision that the number was likely correct, and avoids the conclusion that he had no privacy interest to protect if the number belonged to someone else.

{¶ 68} Therefore, appellant's argument challenges the certainty of information regarding a cell phone number, but the probable cause standard required only a "fair probability." Viewed through this prism, we find no error by the issuing judge or the trial court in finding the probable cause standard was satisfied. Accordingly, we find the affidavit sufficient on its face, and appellant's fifth assignment of error is therefore not well-taken. Having found the CSLI was secured through a proper warrant, we next address the admission of that data through expert testimony.

33.

{¶ 69} In his fourth assignment of error, appellant argues the trial court erred in qualifying Agent Kunkle as an expert in cellphone record analysis, because the testimony did not require any specialized skill or training. "A trial court's determination of the qualifications of an expert witness to testify is within its sound discretion and will not be reversed absent an abuse of that discretion." *State v. Hopings,* 6th Dist. Lucas No. L-05-1145, 2007-Ohio-450, ¶ 48, citing *State v. Awkal*, 76 Ohio St.3d 324, 331, 667 N.E.2d 960 (1996); *State v. Bidinost*, 71 Ohio St.3d 449, 453, 644 N.E.2d 318 (1994).

{¶ 70} In challenging Agent Kunkle's expert testimony, appellant argues that Agent Kunkle did nothing more than consult data prepared by the cell phone service provider and place "dots on a map," a task that did not require any special skill or training. This argument mischaracterizes the testimony. Based on the record of trial, Agent Kunkle also testified regarding the types of phone activity that would "ping" a cell tower, depending on the provider. For example, Agent Kunkle testified that a data session, such as the use of Instagram or Facebook, would not result in a "ping" as part of the record for certain providers. This testimony was based on his knowledge, training, and experience, which appellant did not challenge.

{¶ 71} Courts have found that simply matching a phone record to a cell tower list constitutes a lay opinion. *See, e.g. State v. Daniel,* 2016-Ohio-5231, 57 N.E.3d 1203, ¶ 68 (8th Dist.), citing *State v. Dunn,* 8th Dist. Cuyahoga No. 101648, 2015-Ohio-3138, ¶ 44 (additional citation omitted.). In this case, Agent Kunkle examined records for four

34.

separate cell phones, and offered expert testimony regarding appellant's and Smith's phones, moving in tandem near the shooting, as well as expert testimony regarding the reasons White's phone might not "ping" the same towers despite White's claim he was using his phone at the time. The "process by which a cell phone connects to a given tower" is a proper subject of expert testimony. *Daniel* at ¶ 71, citing *United States v. Evans,* 892 F.Supp.2d 949 (N.D.Ill.2012). Considering the testimony, therefore, we find appellant's fourth assignment of error not well-taken.

## C. Surveillance Video

{¶ 72} In his sixth assignment of error, appellant argues the use of surveillance video was not relevant, and therefore improper, as appellant did not appear on any of this video until hours after the shooting. As previously noted, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Furthermore, our review of the trial court's admission of the surveillance video is limited to whether the trial court abused its discretion. *State v. Halka,* 2021-Ohio-149, 166 N.E.3d 707, ¶ 42 (6th Dist.), citing *State v. Langlois,* 2013-Ohio-5177, 2 N.E.3d 936, ¶ 15 (6th Dist.).

{¶ 73} Appellant challenges the "foundational standard of relevance," for the surveillance video, arguing only White's testimony placed appellant in the HHR, and White's credibility was "a serious issue." Appellant's presence in the HHR, however,

35.

was not the only fact of consequence related to the surveillance video. As the state notes, there were other issues for which such evidence was relevant, such as prior calculation and design. The surveillance video showed the victims leave the America's Best hotel and enter their car within view of the HHR. The video also showed the HHR circling the parking lot, then parking nearby, only to follow the victim's car as it drove off. Finally, the video showed the HHR follow the victim's car onto the freeway, pull up alongside, and then speed away.

{¶ 74} This evidence, while prejudicial to appellant's case, was also not *unduly* prejudicial. As previously stated, we review the record only for *unfair* prejudice, or evidence that "arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish." *Crotts,* 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, at ¶ 24, citing *Oberlin,* 91 Ohio St.3d at 172, 743 N.E.2d 890. Appellant claims none of these occurrences, simply arguing that the state presented the surveillance video to bolster the other evidence and testimony, while failing to place him at the scene.[3] Considering this argument, we find no error in the admission of the surveillance video, and appellant's sixth assignment of error is not well-taken.

---

[3] Appellant also fails to acknowledge that he was tried jointly with Smith, who *did* appear in the video prior to the shooting, and appellant does not raise a failure to seek separate trials as error in this appeal.

36.

### D. Sufficiency

{¶ 75} In his seventh assignment of error, appellant argues the evidence was insufficient to support conviction. "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1433 (6 Ed.1990). Reversal based on insufficiency of the evidence shields a defendant from retrial. *Thompkins* at 387. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶ 76} In reviewing the evidence for sufficiency, we construe the evidence in the prosecution's favor and consider whether "'any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Smith,* 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Furthermore, in considering sufficiency, we neither weigh the evidence nor consider the credibility of the witnesses. *See, e.g., State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79 ("an evaluation of the witnesses' credibility, which—as we have repeatedly pointed out—is not proper on review for evidentiary sufficiency.").

37.

{¶ 77} Appellant challenges his conviction on all counts and specifications, relying on argument that the state failed to present evidence placing him in the HHR at the time of the shooting and failed to present evidence that he participated in the planning of the crime. He does not argue that the state failed to present evidence as to any essential element of any charge or specification, only that the state failed to identify him as the perpetrator. However, appellant acknowledges the testimony of White, placing him at the scene and identifying him as a participant in the planning and the execution of the crime. Furthermore, while appellant challenges the cell phone records and other evidence, we consider all the evidence admitted in making the "due process" determination, as required in a sufficiency analysis. *See State v. Brewer,* 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 18-19 (state may rely on the trial court's evidentiary rulings in a sufficiency review, as the review tests the *process* leading to conviction and not trial errors).

{¶ 78} In light of evidence demonstrating appellant's presence in the HHR at the time of the shooting and his participation in planning the crime, his sole argument challenges the credibility of the witnesses providing such evidence. This is an irrelevant inquiry in a sufficiency review. *State v. Baldwin,* 6th Dist. Wood No. WD-18-064, 2020-Ohio-699, ¶ 33, citing *State v. Walker,* 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978) (sufficiency is a question of law, and "the appellant court will not weigh the evidence or assess the credibility of the witnesses."). Accordingly, we find his challenge to the

38.

sufficiency of the evidence without merit, and his seventh assignment of error is not well-taken.

### E. Manifest Weight

{¶ 79} In his eighth assignment of error, appellant argues his convictions were against the manifest weight of the evidence. Unlike the sufficiency analysis, which tests the adequacy of the state's case, the manifest weight review "concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins,* 78 Ohio St.3d at 386-387, 678 N.E.2d 541, quoting Black's Law Dictionary, 1594 (6 Ed.1990).

{¶ 80} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court 'sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.'" *Thompkins* at 387, quoting *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), syllabus. A "weight of the evidence" review "addresses the evidence's effect of inducing belief." *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386. We defer to the trier of fact, and will not reverse based solely on a "difference of opinion on credibility of witnesses and evidence[.]" *Wilson* at ¶ 24, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984).

39.

{¶ 81} In challenging the weight of the evidence, appellant again argues White's testimony was not credible. Specifically, appellant contends that White had a motive to lie, to take "revenge" on appellant's other codefendant, Smith, and to shift blame to appellant in order to mitigate his own involvement and avoid a life sentence. He also contends that White's testimony was full of inconsistencies and unbelievable regarding details such as appellant needing to load his firearm as they drove toward Barnes' car. Appellant also argues that White's initial lies to investigators rendered his eventual testimony without credibility. Finally, appellant challenges the reliability of cell phone tracking data, despite withdrawing such objections to reliability at trial. In sum, appellant discounts the other evidence presented, as providing no corroboration for White's testimony, and characterizes the case against him as resting solely on that "unreliable" testimony.

{¶ 82} Appellant does not challenge the evidence as to any individual element of each charge or specification, and objects only to evidence identifying appellant as one of the shooters who, with prior calculation and design, fired into Barnes' vehicle at the four occupants, resulting in the death of M.B. Appellant also mischaracterizes the state's case as resting entirely on White's testimony, arguing the "uselessness of the cell phone pings" while also highlighting Agent Kunkle's testimony regarding the limitations of CSLI in providing precise location information.

40.

{¶ 83} Both appellant's and Smith's trial counsel thoroughly probed White's testimony on cross examination, and the jury learned of White's inconsistencies regarding some details, his alleged motive for revenge (which White denied), and the deal White received in return for his testimony. The jury also learned of other evidence, including fingerprint and CSLI evidence, supporting a finding that appellant was present at the scene. Thus, the jury was presented with the very issues appellant now challenges as providing a basis for reversal on manifest weight grounds. The test of manifest weight, however, is not simply inconsistent evidence.

{¶ 84} Reversal based on manifest weight grounds requires more than inconsistency, and should be granted only in exceptional cases where the record "weighs heavily against conviction." *State v. Lindsay,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000), quoting *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541 (additional citation omitted.). "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'" *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya*, 2d Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 85} Upon review of the record in this case, we find this is not the exceptional case requiring reversal, as the evidence does not weigh heavily against conviction. The

41.

jury observed White's testimony, and had the best opportunity to consider his credibility. We defer to the jury's determination, and find appellant's eighth assignment of error not well-taken.

### F. Sentencing

{¶ 86} In his ninth and final assignment of error, appellant argues that the trial court's sentence did not comply with the purposes and principles of the sentencing requirements under R.C. 2929.11. We review a felony sentence pursuant to R.C. 2953.08(G)(2). *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1. Our review, however, does not include review of the trial court's findings under R.C. 2929.11 or 2929.12. *State v. Jones,* 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 28. Simply put, there is "[n]othing in R.C. 2953.08(G)(2) [that] permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 42; *see also State v. Orzechowski,* 6th Dist. Wood No. WD-20-029, 2021-Ohio-985, ¶ 10; *State v. Woodmore,* 6th Dist. Lucas No. L-20-1088, 2021-Ohio-1677, ¶ 17; *State v. Buck*, 6th Dist. Wood No. WD-20-031, 2021-Ohio-1073, ¶ 7; *State v. White*, 6th Dist. Wood No. WD-20-040, 2021-Ohio-987, ¶ 10.

{¶ 87} Accordingly, as review of the trial court's findings as to the purposes and principles of sentencing under R.C. 2929.11 is not permitted, we find appellant's ninth

42.

assignment of error provides no grounds to find reversible error. Appellant's ninth assignment of error, therefore, is not well-taken.

## V. Conclusion

{¶ 88} Having found substantial justice has been done, we affirm the judgment of the Lucas County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

_____
JUDGE

Gene A. Zmuda, P.J.

_____
JUDGE

Myron C. Duhart, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

43.